STATE EX REL. MONARCH FIRE INSURANCE CO., APPELLANT, *v.* HOLMES, STATE AUDITOR, RESPONDENT.

(No. 8,272.)

STATE EX REL. EUREKA-SECURITY FIRE & MARINE INSURANCE CO., APPELLANT, *v.* HOLMES, STATE AUDITOR, RESPONDENT.

(No. 8,273.)

(Submitted February 10, 1942. Decided March 13, 1942. Opinion on Motion for Rehearing, April 28, 1942.)

[124 Pac. (2d) 994.]

*Mr. Harlow Pease, Mr. John K. Claxton,* and *Messrs. O'Connor & Farber,* of the Bar of the City of New York, submitted a brief; *Mr. Basil O'Connor* argued the cause orally.

*Mr. John W. Bonner,* Attorney General, and *Mr. Howard M. Gullickson,* First Assistant Attorney General, for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

The two cases, argued at the same time as Cause No. 8271, *State of Montana ex rel. Pearl Assurance Company* v. *John J. Holmes,* arise on similar facts and for the purpose of argument were combined. In each of the cases the relator sought a writ of prohibition as in Cause 8271. As in that case, the motion to quash the writ in each of these cases was granted by the district court and from those orders these appeals are taken.

The relators argue that prohibition will lie for two reasons, the first being that the commissioner of insurance acquired no jurisdiction by the order to show cause why the license of each of the relators should not be revoked for the reason that the order in each case does not state a cause of action; and, second, that the commissioner did not acquire jurisdiction because the order to show cause in each case was not directed to the relator but rather to the Pearl Company.

The order to show cause in each of these cases, as to the alleged violations of the statute, sec. 167, Rev. Codes, by the Pearl Company in substance is the same as in Cause 8271. No violation of the statute by either of the relators is alleged. The reason for seeking the revocation of their licenses because of the Pearl Company's actions is set out by the commissioner in paragraph numbered I of the order to show cause in each case, which reads, omitting the portion setting out the name and corporate existence of each of the relators:

"That said company is associated with the Pearl Assurance Company, Ltd., and is a subsidiary of the Pearl Assurance Company, Ltd.; that said Pearl Assurance Company, Ltd. owns a controlling interest in and exercises actual control over the activities of said" company, "that the said Pearl Assurance Company, Ltd., has engaged in certain practices within the State of Montana as hereinafter set forth, and the said" company "by reason of its relationship as aforesaid to the Pearl Assurance Company, Ltd. should be charged to the practices attributed to its parent company and should not by reason of its separate corporate entity be permitted to engage in the insurance business within the State of Montana if it should be found upon the hearing of the charges aforesaid that its parent company, the Pearl Assurance Company, Ltd., is guilty of the charges and practices hereinafter alleged, and its license to do business revoked. That if the license of the Pearl Assurance Company, Ltd., is revoked the license of said" company "should likewise be revoked so as to preclude the Pearl Assurance Company, Ltd. from continuing to operate in the State of Montana by and through said" company.

The statute does not recognize this statement of facts as a sufficient ground for revocation of the license of an insurance company. The statute contemplates that the license of the company violating the statute shall be revoked and it takes no cognizance of a situation such as this. It provides in part: "If the commissioner finds * * * that any insurance company * * * is in an unsound condition, or has failed to comply with the law * * * he shall suspend or revoke all certificates of authority granted to said insurance company."

The licenses in these two causes were not issued to the Pearl Company, nor are any violations of the law charged against relators. The commissioner must then rely on the theory that in reality these relators and the Pearl Company are one and the same and that relators' licenses are actually the property of the Pearl Company and that relators in truth have no separate corporate existence for the purpose of these proceedings but

actually are a part of the parent corporation, the Pearl Company.

By this allegation in the order to show cause, the commissioner seeks to disregard the corporate entity of the relator in each case. If the allegations are not sufficient to warrant a disregard of the corporate fiction, then the order to show cause states no cause of action against the relators, and the commissioner would be without jurisdiction to proceed in the matter, and therefore even though the remedy by appeal would ordinarily be adequate, under the rule in *State ex rel. Lane* v. *District Court,* 51 Mont. 503, 154 Pac. 200, 202, L. R. A. 1916E, 1079, prohibition will lie. The rule is there stated: ''Whenever it is made to appear * * * that under no conceivable circumstances can the district court render a valid judgment because of a lack of jurisdiction the discretion should be exercised in favor of issuing the writ [of prohibition], to the end that litigants may be saved the needless trouble and expense of prosecuting their litigation to a fruitless judgment.''

It is well established that under certain circumstances the corporate entity may be disregarded. (*Fish* v. *East,* 10 Cir., 114 Fed. (2d) 177; *Platt* v. *Bradner Co.,* 131 Wash. 573, 230 Pac. 633, 13 Am. Jur. 162; Wormser, The Disregard of the Corporate Fiction.) There are a host of cases under many varying factual situations dealing with the question when the corporate veil may be pierced and when it may not. While the fact situations and the holdings of the court vary greatly, yet from them some rules have been developed which are persuasive on this question. The two general theories on which the courts proceed when they go back of the corporate fiction are, first, that the corporation whose corporate identity is disregarded is under the control of the parent corporation and acted as its agent in this particular transaction, and the second is that the corporation whose identity is disregarded is so identified with the corporation sought to be charged as in effect to make the two corporations one. The first of these theories is commonly called the ''agency'' and the second the ''identity''

.theory. In order to invoke the agency theory the act giving rise to the action must be the act of the subsidiary. Here, by the allegations of the complaint, the wrongful act sought to be charged against the subsidiary is the act of the parent. It is clear that no element of the agency situation appears in these ,cases, and that if the corporate entity of the relators is to be disregarded, it must be on the identity theory. Ordinarily a corporation is treated as a separate legal entity separate, distinct and apart from the members who compose it.

. The general rule is that "a corporation retains its separate and .distinct identity where its stock is owned partly or entirely by another corporation as well as where it is owned by natural persons." (18 C. J. S., Corporations, sec. 5, p. 375. )Before the corporate cloak will be disregarded "it must appear not only that the corporation is controlled and influenced by one or a few persons, but, in addition, it is necessary to demonstrate that the corporate cloak is utilized as a subterfuge to defeat public convenience, to justify wrong, or to perpetrate fraud." (18 C. J. S., Corporations, sec. 6, p. 378.) Under the identity theory it must appear from the evidence and must be sufficiently .alleged that the subsidiary corporatinn is a mere creature of the parent, having no separate business existence and serving as a mere business conduit of the parents (*In re Muncie Pulp Co.*, 2 Cir., 139 Fed. 546), or a mere department of the parent (*Inter-state Tel. Co.* v. *Baltimore & O. Tel. Co.*, C. C., 51 Fed. 49).

In *People ex rel. Studebaker Corp.* v. *Gilchrist*, 244 N. Y. 114, 155 N. E. 68, 71, it is said: "Before 'the corporation persona' may be ignored, the evidence must show that 'the subsidiary is not left with any autonomy' (* * * *Proctor & Gamble Co.* v. *Newton*, supra [D. C. 289 Fed. 1013]), and that the parent, though in form speaking and acting through another, is operating the business directly for itself." (See, also, *Erickson* v. *Revere Elevator Co.*, 110 Minn., 443, 126 N. W. 130.)

When tested by these rules, we think the order to show cause ▮▮▮ is insufficient to warrant a disregard of the corporate entity. In the first place, the allegation as to the identity of the

corporation is not sufficient. Mere control by one corporation of another is not sufficient to invoke the rule permitting disregard of the corporate entity. There is no showing that either of the relators is the mere *alter ego* of the Pearl Company, that either is a mere department or adjunct of the Pearl, or a business conduit of it. (*See United States* v. *Lehigh Valley R. Co.,* 220 U. S. 257, 31 Sup. Ct. 387, 55 L. Ed. 458.)

Neither are the allegations sufficient to show that the corporate cloak of the relators is used or will be used as a subterfuge to defeat public convenience, justify wrong or perpetrate fraud. The relators each were licensed separately to engage in the busienss of writing fire insurance and it is not alleged that their methods of doing business are anything but lawful. The order to show cause seeks an additional penalty against the Pearl Company and its stockholders which is not provided in the statutes. The commissioner has recognized the separate corporate entity of relators in the past, he makes no complaint of them now and the fact that the parent corporation may have conducted its business contrary to the statute may not be charged against relators under these allegations. The control and ownership the Pearl Company exercised over relators existed prior to the violation alleged and it cannot be said that ownership and control was intended as a means to escape the law, perpetrate fraud, or justify wrong.

Respondent relies on *Fish* v. *East,* 10 Cir., 114 Fed. (2d) 177. There the corporate entity was disregarded but the facts are entirely different. The facts in that case show that the rules allowing disregard of the corporate identity did apply as the subsidiary was a mere adjunct of the parent and was treated as a department of the parent. The affairs of the two were so intermingled that they could not be distinguished and it must be said that the subsidiary was a mere instrumentality of the parent. We have examined the other authorities cited by respondent and all of them recognize the rules stated in this opinion and disregard the corporate entity only where the fact situation brings the case within these rules.

310

Section 167, Revised Codes, provides: "Before suspending or revoking the certificate of authority of any such company, the commissioner shall * * * grant it fifteen days in which to show cause why such action should not be taken." With that provision the commissioner has not complied. Even though the corporate fiction might be disregarded, that does not relieve the commissioner of his obligation to address his order to show cause to the relators. The very question to be determined in these two cases is whether the relators are so dominated and controlled by the Pearl Company as to make them in reality mere tools of that company and so require that their licenses be revoked. Since the order to show cause is not directed to relators, the commissioner acquired no jurisdiction to issue any valid order concerning them.

The writ should issue and it is so ordered. On motion for rehearing the opinion promulgated in these causes on March 13, 1942, is hereby ordered withdrawn and the above substituted therefor.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN, ANDERSON and MORRIS concur.