No. 12150

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

THOMAS J. KAMP,

Plaintiff and Appellant,

-vs-

FIRST NATIONAL BANK AND TRUST COMPANY
OF HELENA,

Defendant and Respondent.

Appeal from: District Court of the Eighteenth Judicial District,
Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

For Appellant:

Bolinger and Wellcome, Bozeman, Montana.
G. Page Wellcome argued, Bozeman, Montana.

For Respondent:

Gough, Booth, Shanahan and Johnson, Helena, Montana.
Ronald F. Waterman argued and Myron E. Pitch appeared,
Helena, Montana.

Submitted: September 18, 1972

Decided: JAN 3 1973

Filed:

Thomas J. Kearney
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal by Thomas J. Kamp, plaintiff, from a judgment entered in the district court of Gallatin County. The Hon. Gordon R. Bennett in a trial without jury held that the defendant, First National Bank of Helena, was not liable for the debt owed to the plaintiff by the Three Forks Commercial Feed Lot.

The basic issue in this case, at the trial and on appeal, is whether the defendant First National Bank entered into a contract to assume the debt of the Three Forks Commercial Feed Lot owing to plaintiff Kamp. The alleged contract was contended to have come about as the result of three contacts between Kamp and Gibson Goodman, an officer of the bank. The first of these occurred sometime in the latter part of June, 1970 by telephone. Kamp became concerned over the amount of the past due account of the feed lot. He had delivered barley to the feed lot totaling a value of $18,644.60 for which he had not been paid. Aware that some bank was involved with the financing of the feed lot Kamp contacted his own banker in Bozeman, Philip Sandquist. Sandquist placed a call to the First National Bank inquiring about the matter and was informed that Gibson Goodman was handling the transaction for the bank. In talking with Goodman, Sandquist said that Kamp was concerned about the past due account. In response to this Goodman was alleged to have said to tell Kamp not to worry that everything would be taken care of. At this Sandquist then requested that Goodman then/had a conversation over the telephone where the same statement was repeated. tell that to Kamp. Kamp and Goodman then

The next contact took place in Helena at the bank. At this time Kamp, as he put it, attempted to "put pressure" on the bank for his money. He told Goodman that he was considering

- 2 -

filing a suit or a lien. Goodman replied to this, according to Kamp, by asking him to hold off, that such an action would only force the feed lot into bankruptcy and it would be years before anybody got their money. According to Goodman, the substance of this meeting was that if Kamp would be patient attempts were being made to see that everybody got paid. These attempts were in the nature of selling the property or obtaining refinancing.

The final contact was at Kamp's home in Three Forks, Montana. Goodman, Kaminga, owner-manager of the feed lot, and Kamp were present at a meeting which took place on July 17, 1970. At this meeting it was agreed that Kamp would receive $6,441.60 on the account, leaving a balance of $12,000. It was further agreed that Kamp would continue to deliver feed to the feed lot operation. There is a dispute in the testimony as to whether this money was actually paid on the past due account, which is the contention of Kamp, while it is the position of Goodman that this was payment for barley on hand at the time the bank took over the operation.

It was on this evidence that Judge Bennett held as a matter of law:

> "That no written or oral promise, assurance, statement or contract was made by the defend- ant with or to the plaintiff to assume the debt of the feed lot owed plaintiff and there- fore the defendant is not obligated to pay the debt of the Three Forks Commercial Feed Lot owing to the plaintiff."

He further held:

> "That from the record, there is no evidence which shows that the payment by the defendant to plaintiff of the sum of $6,441.60 was a partial performance or ratification of any oral promise of the defendant and therefore any oral promise if it had existed would be unenforceable under the provisions of the Statute of Frauds."

On appeal this Court is limited to a determination of whether the facts of this case are sufficient to sustain the findings of the trial judge, the trier of facts, who expressly held that there was no contract between Kamp and the bank. There are two principles of law which aid us in this determination. First, "That this court indulges the presumption that the judgment of the district court is correct and will be upheld unless clearly shown to be erroneous, the burden of showing which rests upon the appellant." Dalbey v. Equitable L. Assur. Soc. of U.S., 105 Mont. 587, 598, 74 P.2d 432. Secondly, "That the finding of the trial court will not be disturbed or reversed if the evidence, fully considered, furnishes reasonable grounds for different conclusions." Dalbey at 598. These principles have been carried forward into Morrison v. City of Butte, 150 Mont. 106, 112, 431 P.2d 79, where this Court held:

> " * * * This court will not overturn the holding or findings of a trial court unless there is a decided preponderance of the evidence against them, and, when the evidence furnishes reasonable grounds for different conclusions findings will not be disturbed."

In that framework and reviewing the record of this case we are of the opinion that the district court did not err in making its decision. The formation of contracts in the State of Montana is governed by statute. Section 13-102, R.C.M. 1947, provides:

> "Essential elements of contract. It is essential to the existence of a contract that there should be:
>
> "1. Parties capable of contracting;
>
> "2. Their consent;
>
> "3. A lawful object; and
>
> "4. A sufficient cause or consideration."

Of the four elements which are essential to the existence of a contract it appears in this case that the elements of consent

and object are missing. Taking Kamp's evidence at its strongest it would not appear that Goodman ever agreed on behalf of the bank to assume the debt. We certainly find nothing in the record which would preponderate against the findings that were made by the district court.

Therefore, holding that there was no contract between the parties, there is no need for this Court to go further in discussing the issue of the statute of frauds.

The judgment of the district court is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____
Associate Justices

- 5 -