No. 12997

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

MORGEN & OSWOOD CONSTRUCTION CO.
INC., A MONTANA CORPORATION,

Plaintiff and Appellant,

-vs-

BIG SKY OF MONTANA, INC., a
DELAWARE CORPORATION,

Defendant and Respondent.

---

Appeal from: District Court of the Eighteenth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Jardine, Stephenson, Blewett & Weaver, Great Falls,
Montana
Jack L. Lewis argued, Great Falls, Montana

For Respondent:

Landoe and Gary, Bozeman, Montana
Joseph B. Gary argued and Stephen Barrett appeared,
Bozeman, Montana
David J. Penwell, Gallatin Gateway, Montana

---

Submitted: September 3, 1976

Decided: NOV 29 1976

Filed: NOV 2 9 1976

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment of the district court, Gallatin County, for defendant in an action to foreclose on a mechanic's lien.

Plaintiff Morgen & Oswood Construction Co., Inc. (Morgen & Oswood) brought this action to foreclose a mechanic's lien on seventeen buildings containing fifty condominium units at Big Sky of Montana, Inc. (Big Sky) site in the Gallatin Canyon, south of Bozeman. These were the first condominium units built at Big Sky and were built when the area was still relatively primitive.

Big Sky sought bids on the project from several contractors but did not request a bid from Morgen & Oswood. Morgen & Oswood approached Big Sky asking to be allowed to bid. It was given the specifications for the job and informed the time allowed for the completion of the project would be 114 days, which meant the schedule was tight. The specifications contained a clause exacting a $500 per day deduction for each day the project was late. At Big Sky's request an alternative bid was submitted on the project if there would be an extra 46 days added to the completion time. Morgen & Oswood submitted an alternative bid $15,000 lower than the 114 day bid. This alternative bid was rejected by Big Sky.

The contract was awarded to Morgen & Oswood and Big Sky allowed work on the project to begin twelve days before the date called for in the contract, without starting the 114 day clock running.

- 2 -

The questions presented for review are:

1) Was the $500 per day deduction a penalty violative of section 13-804, R.C.M. 1947?

2) Did the district court err in finding that January 3, 1972, was the date upon which to end the $500 per day deduction?

3) Did the district court err in finding there was no proof that Big Sky contributed substantially to the delay in the completion of the project?

4) Did the district court err in finding that Big Sky made a valid tender of the money due to Morgen & Oswood?

The first question involves construction of sections 13-804 and 13-805, R.C.M. 1947 which provide:

> "13-804. Contracts fixing damages void. Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section."

> "13-805. Exception. The parties to a contract may agree therein upon an amount which shall be presumed to be an amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

The Montana cases interpreting these sections establish that a penalty clause is prima facie void and to come within the exception, facts must be alleged and proven from which the court can say the liquidated damages clause is valid because the damages are by the nature of the case extremely difficult or impracticable to fix. Deuninck v. West Gallatin Irrigation Company, 28 Mont. 255, 72 P. 618; Clifton v. Willson, 47 Mont. 305, 132 P. 424.

Big Sky met this burden. It presented evidence which indicated the $500 per day figure was arrived at by estimating lost rent at $120 per day; interest on money borrowed to build the project at

$440 per day; and $60 per day heating and light expense on the units. Big Sky also considered the harm to its sales effort if the units were not completed in October as promised. These estimates were at best guesses, based on some prior experience and knowledge of the project. The total was rounded to $500 per day as a reasonable conservative estimate of the loss Big Sky would suffer if the project was late. Big Sky also offered evidence which indicated that the total damage suffered by Big Sky exceeded the $500 per day figure. Actual proof of the accuracy and basis of these estimated figures is very nearly impossible. As a result, construction contracts often provide for a fixed sum as damages. In 5 Corbin on Contracts, Damages, §1072, it is stated:

> "In contracts for the construction and delivery of buildings or machinery, it is often provided that a fixed sum shall be paid for each day's delay in completion beyond a date agreed upon. Since the injury caused by such delay is nearly always difficult to determine, the courts strongly incline to accept the estimate as reasonable and to enforce it. * * *"

In 60 California Law Review 84, 122, Professor Justin Sweet, discusses the California case law interpreting §§1670, 1671, California Civil Code, identical to sections 13-804, 13-805, R.C.M. 1947, and points out the reasons that such clauses are usually upheld where there is an unexcused delay by the contractor:

> "* * * First, while the liquidation amounts may not actually be bargained, the contractor can take this into account when he makes his bid. Second, most construction contractors are not so unsophisticated as to merit special protection by the courts. Third, courts enforce these clauses as a means of saving themselves from having to decide difficult fact questions relating to damages. Finally, these clauses are enforced because delays do cause losses, but the actual loss is often not provable under traditional damage rules, which require certainty, proof of causation, and forseeability."

Morgen & Oswood knew of the strict time limits and took them into consideration when its bid was submitted. It submitted a bid that was $15,000 less on the same project, if the time were extended 46 days. It is clear Big Sky suffered damages from the delay in completion, but it is also true there would be difficulty in showing the actual amount under the damages rules. The $500 per day deduction is the type of clause courts usually enforce and one which meets all the requirements of section 13-805, R.C.M. 1947. The only serious impediment to finding that it is a valid liquidated damages clause is that Big Sky, in its contract, referred to the $500 per day deduction as a "penalty". This is not in and of itself determinative. At /5 Williston on Contracts, Third Edition Section 784, p. 730, it is said:

> "'(2) The mere denomination of the sum to be paid as "liquidated damages," or as "a penalty," is not conclusive on the court as to its real character. Although designated as "liquidated damages" it may be construed as a penalty, and often when called a "penalty" it may be held to be liquidated damages, where the intention to the contrary is plain.'"

The Oklahoma Supreme Court in Waggoner v.Johnston (Okla.1965), 408 P.2d 761, 769, when interpreting a contract in light of statutory provisions identical to section 13-804 and section 13-805, R.C.M. 1947, said:

> "Whether the forfeiture provision imposed a penalty, or provided for liquidated damages, is to be determined from the language and subject matter of the contract, the evident intent of the parties and all the facts and circumstances under which the contract was made. The most important facts to be considered are whether the damages were difficult to ascertain, and whether the stipulated amount is a reasonable estimate of probable damages or is reasonably proportionate to the actual damage sustained at the time of the breach."

Here the "most important facts" are in Big Sky's favor, the damages were difficult to determine and they proved to be a reasonable estimate of the damages actually suffered.

- 5 -

The United States Supreme Court faced a similar problem in United States v. Bethlehem Steel Co., 205 U.S. 105, 27 S.Ct. 450, 51 L ed 731,737, the Court said that while the word "penalty" was used and not the term "liquidated damages" that:

> "* * * It was used simply to provide that the amount named might be deducted if there were a delay in delivery. Either expression is not always conclusive as the meaning of the parties. * * *

> "* * * It would have been very unusual to allow the company to obtain the contract for the construction of these carriages, and yet to place it under no liability to fulfil it as to time of delivery, specially agreed upon, other than to pay only those actual damages (not exceeding $35 per day) that might be proved were naturally and proximately caused by the failure to deliver."

Here, the same statement applies. The completion time was plainly important and was the subject of bidding. Morgen & Oswood offered a $15,000 decrease in the contract price for an increase of 46 days in contract time which amounts to over $300 per day. This was refused by Big Sky. It is obvious that Morgen & Oswood should not get the higher contract price and at the same time be able to avoid the time limit which served as the consideration for the higher amount. The use of the word "penalty" does not reflect careful draftmanship but it is not a talisman which prevents inquiry into the reality of the intent of the parties and the facts and circumstances surrounding the agreement. The $500 per day deduction was an amount stipulated as liquidated damages and meets the requirements of section 13-805, R.C.M. 1947. It is a reasonable estimate of damages which were impracticable or extremely difficult to fix.

The remaining questions on appeal involve the determinations by the district court 1) January 3, 1972 was the proper date to end the deduction of the liquidated damages; 2) Big Sky did not

contribute substantially to the delay in completion; and 3) the amount due was validly tendered by Big Sky on February 25, 1972. It is not a function of this Court to make its own determination as to the facts and the law, rather it reviews the findings of the district court. The Court in Hellickson v. Barrett Mobile Home Transport, Inc., 161 Mont. 455, 458, 507 P.2d 523, quoting from Hornung v. Estate of Lagerquist, 155 Mont. 412, 420, 473 P.2d 541, pointed out:

> "'Our duty in reviewing findings of fact in a civil action tried by the district court without a jury is confined to determining whether there is substantial credible evidence to support them.'"

The Court put it another way in Kamp v. First National Bank and Trust Co., 161 Mont. 103, 106, 504 P.2d 987, quoting from Morrison v. City of Butte, 150 Mont. 106, 112, 431 P.2d 79:

> "'This court will not overturn the holdings or findings of a trial court unless there is a decided preponderance of the evidence against them, and, when the evidence furnishes reasonable grounds for different conclusions, findings will not be disturbed.'"

Morgen & Oswood argues that some of the seventeen buildings were complete long before the date upon which the architect signed the certificate of final completion. It also points out that a certificate of substantial completion was signed on December 11, 1971.

We note the certificate of substantial completion was accompanied by an extensive punch list of unfinished work and even the final completion certificate was accompanied by a punch list of unfinished items. One important bit of evidence which supports the January completion date, is the fact that Big Sky had as strong an interest in getting the certificate of final completion as did Morgen & Oswood.

- 7 -

The "Unit Ownership Act", Chapter 23, Title 67, R.C.M. 1947, as it provided at the time of the contract, required a statement by the architect or professional engineer who prepared the floor plan, certifying the accuracy of the plans and the date construction was completed. This statement accompanied the recording of the declaration which had to be filed. This meant that no sale could be closed and recorded until construction was completed on the entire project. Big Sky indicated there were buyers who backed out when the completion was not on time and those sales could have been made final, if the closings had been on schedule. The architect testified there was considerable pressure on him from Big Sky to certify completion. Testifying about the certification that he signed he said:

> "* * * I was very hesitant to sign anything until actually the last final check list item would be done. However, it could also be taken as substantial completion. And this was not clear to us at the time. Mr. Penwell was under pressure to close sales and the check list was not being completed. So we initiated this agreement in January that would essentially be the final completion still with the check list which was an unorthodox procedure just so I could sign them and say they were completed, I could sign them with a better conscience."

Big Sky could not, and did not, close any sales until after all of the buildings were certified as being complete. It was reasonable for the district court to use the January 3, 1972 date as the end date for the liquidated damages.

60 California Law Review 84, 123, points out:

> "The second interpretation problem courts frequently face is determining when a project is completed for liquidation purposes. The general answer is that actual, not substantial, completion is required. However, courts will be hesitant to apply this rule where the stipulated damages are high and the project is available for use."

Here, the damages are high but the project was not ready for the use Big Sky intended, the sale of these units. There is no showing that the evidence preponderates against this finding by the district court and it is supported by substantial evidence.

We find no preponderance of evidence against the district court's finding that Morgen & Oswood failed to prove a substantial interference by Big Sky with the contractor's work and that Morgen & Oswood failed to make application in compliance with the contract for extension of time. Morgen & Oswood argue that Haggerty v. Selsco, 166 Mont. 492, 534 P.2d 874, which held that delay caused by the owner constitutes a waiver of liquidated damages, applies in the instant case. We do not agree, because there is no finding that Big Sky caused the delay here. It is very difficult to pinpoint with any certainty the reasons for the delay, but the inability to get labor, especially skilled labor, and the primative conditions at the job site were a part of the cause. These matters were the contractor's responsibility which had to be taken into account at the time the bids were submitted.

The district court's finding there was a valid tender is supported by substantial evidence on the record. Negotiations between Big Sky and Morgen & Oswood broke down and Big Sky gave a check to Morgen & Oswood for the balance due on the contract, less the liquidated damages. This check was refused and returned. The mechanic's lien was filed and this suit instituted. The net amount due to Morgen & Oswood was paid with no strings attached. Since the liquidated damages clause is valid and the check was for the net amount due after the deduction of the liquidated damages, the lien was improperly filed.

- 9 -

We have examined other issues raised and find no merit in them.

The decision of the district court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_Wesley Castles_

_Frank I. Haswell_
Justices.

_Jack D. Shanstrom_
Hon. Jack Shanstrom, District
Judge, sitting for Justice
Daly.