No. 13653

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

NELSON E. CORSCADDEN,

Plaintiff and Respondent,

-vs-

STEPHEN J. KENNEY,

Defendant and Appellant.

---

Appeal from: District Court of the Seventeenth Judicial
District,
Honorable Thomas Dignan, Judge presiding.

Counsel of Record:

For Appellant:

Douglas Y. Freeman argued, Hardin, Montana

For Respondent:

Robert Hurly argued, Glasgow, Montana

---

Submitted: December 2, 1977

Decided: DEC 2 6 1977

Filed:

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Nelson E. Corscadden, d/b/a Corscadden Steel Construction Company, brought this action against Stephen J. Kenney, seeking damages occasioned by an alleged breach of contract by Kenney. Kenney answered and counterclaimed for alleged equipment rental due and damages resulting from alleged defective workmanship and default by Corscadden. A nonjury trial was commenced in the District Court, Valley County, on December 2, 1976. By its findings of fact and conclusions of law dated December 30, 1976, the District Court, the Honorable Thomas Dignan presiding, rendered judgment for plaintiff Corscadden in the amount of $8,961.55 with interest at 6 percent per annum, and denied Kenney's counterclaim. Kenney appeals the judgment and the denial of his counterclaim.

Defendant Kenney, a contractor from Hardin, Montana, was the successful bidder with the United States Corps of Engineers on a contract to rehabilitate a barge at Fort Peck, Montana. A portion of the rehabilitation consisted of welding on the barge. Corscadden submitted a bid to Kenney, seeking to subcontract performance of the welding services. The bid was rejected. However, in May, 1975, a verbal agreement was entered into between Kenney, by his superintendent Ralph Marcher, and Corscadden. Kenney hired Corscadden and his employees on an hourly basis to furnish labor by certified welders, welding material and two welding machines at a rate of pay of $16 per man hour. Corscadden and his employees were to begin performance in May, 1975. Although Corscadden and his employees were based in Glasgow, Montana, a distance of 17 miles from the job site, no agreement was reached at the time concerning mileage charges.

Corscadden moved the welding equipment from Glasgow to Fort Peck and began performance on May 12, 1975. On June 22, however,

-2-

a dispute arose between the parties concerning the rate at which the work was progressing. Corscadden terminated the employment and moved his men and equipment off the job.

On June 24, unable to locate replacement welders, Marcher reached a verbal agreement with Corscadden for continued performance, the terms of which, for the greater part, are in dispute. The parties agree that Corscadden and his men were entitled to a new rate of pay of $22 per hour. Corscadden contends, however, the parties agreed the new rate of pay would operate retroactively to the beginning of the job, covering some 145-1/2 man hours worked, and mileage charges of $1 per actual mile traveled between Glasgow and Fort Peck, also applicable retroactively. Such items were alleged to have been payable upon completion of the work. Marcher disputes the latter terms. In any event, Corscadden and his men did return to work on June 24, 1975, and commenced performance under the terms of the new agreement.

At trial, the parties disputed liability for rent on certain items of Corscadden welding equipment. Kenney and Marcher admitted liability for an exhaust fan, one grinding machine, oxygen and acetylene bottles and gauges, and a cutting head. However, Corscadden testified additional items of equipment, consisting of a second grinding machine, a paint respirator, a "scarfing tip", and flood lights were also rented. Marcher asserted the rental rates were to have been those established by a local rental agency, Moen's Equipment Rental of Glasgow. Corscadden testified there was no agreement to so restrict the rental rates, but rather the rates charged were those he typically charges for rental of such items; a rate higher than that charged by Moen's. It should be noted, in this regard, that certain of the items in dispute were not available for rental at Moen's.

A further dispute concerns the cost of time and travel for a three day testing and recertification of one of Corscadden's

employees, Zane Geer. Corscadden contends Kenney is liable for such costs under the express terms of the prime contract between the United States and Kenney. Kenney denies liability for such costs, arguing Corscadden had agreed to provide certified welders.

In support of his counterclaim for damages due to delay and defective workmanship, Marcher testified Corscadden failed to provide the two-man work force agreed upon during May and June, 1975. Other welders were employed by Kenney to complete the job. Kenney stated that, due to the delay, he was unable to bid on other potential jobs. Other defense witnesses indicated, however, the delays were due primarily to the failure of Kenney's crew to have welding steel available and make the job site ready for work. It is undisputed that Kenney was subjected to no fine or penalty due to the ultimate delay in completing performance on the prime contract. Additionally, Marcher testified Corscadden's failure to provide the proper/one-fourth-inch welds required by the terms of the prime contract resulted in approximately 200 hours of rewelding and, thus, additional delay and cost to Kenney. Kenney stated he was damaged in an approximate amount in excess of $10,000. Corscadden testified, however, he was not made aware of the specifications regarding weld thickness and was not informed of the insufficiency of the work at the time it was being performed, although Marcher himself was in constant supervision of the welding work.

Corscadden testified that due to Kenney's failure to make scheduled payments on their agreement, he was forced to obtain high cost bank loans to finance his employees' salaries and continued operations. As a result, Corscadden allegedly suffered a loss of credit and damages to his business reputation.

Corscadden and his men completed their work on August 20, 1975. Kenney contends his final payment of $6,541.44, by check dated October 30, 1975, was accepted and cashed in full satisfaction of the account. Corscadden denied such sums were accepted as final payment.

-4-

The District Court gave judgment for Corscadden on all items of damage, save those for loss of credit and business reputation. Awarded to Corscadden were the following:

```
Total 824-1/2 hours labor at $22 per hour,
     including 24 hours compensation for
     recertification of Corscadden employee
     Geer . . . . . . . . . . . . . . . . . .$18,139.00

Mileage charges, retroactive to May 12, 1975 .  3,706.00

Equipment rental and other charges . . . . . .  3,727.55

           TOTAL DUE CORSCADDEN FROM KENNEY. .$25,572.55

              Less payments made by Kenney. .(16,611.00)

                 BALANCE DUE AND OWING. .$ 8,961.55
```

The court computed 6 percent interest on the rental and other charges from December 15, 1975, the date at which the last of the equipment was returned, and 6 percent interest on the balance owing on the labor and mileage accounts from October 30, 1975, the date at which the last of the payments on such account was made.

The District Court denied Kenney's counterclaim on the ground that the work was done under the direct supervision of Kenney's foreman, Marcher, who failed to disclose the plans and specifications to the welders. Thus, Corscadden could not be held responsible for the delays due to faulty welding. The court also denied Kenney's counterclaim for rental due on a welding machine present at the site of the work, finding that its presence was at all times for the convenience of Kenney.

The sole determination to be made on this appeal concerns the sufficiency of the evidence adduced at the trial, to sustain the findings of fact and conclusions of law of the District Court, and the judgment subsequently entered thereon.

The thrust of appellant's argument on appeal is that the evidence is insufficient to support the judgment of the District Court.

The proper standard for review of a lower court's findings of fact and judgment based thereon was recently stated in the case of Strong v. Williams, (1969) 154 Mont. 65, 68, 460 P.2d 90:

> "* * * Where the evidence is conflicting, but substantial evidence appears in the record to support the judgment, the judgment will not be disturbed on appeal, and this is especially true when the district court, as here, has passed upon the sufficiency of the evidence * * *."

See also: McGuire v. American Honda Co., (1977) ___Mont.___, 566 P.2d 1124, 34 St.Rep. 632; Kearns v. McIntyre Const. Co., (1977) ____Mont.____, 567 P.2d 433, 34 St.Rep. 703.

While the evidence offered below by the respective parties is, in varying degrees, in direct conflict, we conclude the evidence taken as a whole substantially supports the findings of the District Court, with two minor exceptions.

Respondent Corscadden contends, and the record makes plain, that appellant Kenney's offered evidence is often unclear and, in certain respects, contradictory. Kenney's primary evidence, in the form of the testimony of his supervisor, Marcher, is ambiguous regarding numerous terms of both the original and renegotiated agreements between the parties.

The credibility and weight accorded given witnesses is a primary function of a trial judge sitting without a jury and is of special consequence where the evidence is in conflict. This Court will ordinarily sustain such a determination on appeal. Hellickson v. Barrett Mobile Home Transport, Inc., (1973) 161 Mont. 455, 507 P.2d 523; Eliason v. Eliason, (1968) 151 Mont. 409, 443 P.2d 884.

We feel the judgment of the District Court, given the facts as presented, is essentially correct. However, the dispute concerning the retroactivity of the increased pay rate and mileage charges necessitates a modification of judgment in this case. Corscadden never demonstrated that Marcher had agreed to such terms, as the following direct testimony of Corscadden himself will disclose:

-6-

"Q. Did you reach any agreement on whether or not this $22 per hour would go back to the start of the contract? A. We had talked about that. We hadn't even been paid for the 145 hours, I don't think, at that time, and I just assumed that we did. You know, that it would start right from the start.

"Q. Did you discuss that with Ralph [Marcher]? A. Yes, we did, and he talked back and forth about it, and I don't remember any decision made whether, you know, that was the way it was going to be or not.

"BY THE COURT: Did you ever make an agreement on that? Or what was the situation? A. I don't think there was ever an agreement made one way or the other.

"BY THE COURT: On the -- A. I know he didn't want to pay it, and I wanted it. We argued it out, but I don't think there was ever any final agreement made whether they were going to pay it or not." (Emphasis added.)

Further, a Corscadden invoice admittedly submitted subsequent to renegotiation of the agreement on June 24, 1975, gave credit for the additional rate of pay at 145-1/2 hours. This, we feel, constitutes a clear admission of nonretroactivity.

Likewise, the following direct testimony of Corscadden concerning mileage charges indicates no agreement was reached concerning retroactivity of such charges:

"A.  * * * I told him [Marcher] I wanted a dollar a mile, and he said, 'What? For three men  that would come to quite a bit.' I said, 'The men drive their own outfits, but my truck runs over the road, it would be 34 miles a day.'

"Q. Did you agree on that? A. Yes.

"Q. And did you agree on whether or not that would be retroactive or not? Whether or not that would go back to the start of the contract or not? A. No." (Emphasis added.)

There being no evidence of record to justify a finding that Corscadden was entitled to the above retroactive rates and, indeed, the entire weight of evidence to the contrary, the judgment must be reduced accordingly, under the previously noted "substantial credible evidence" standard of review.

The judgment of the District Court is therefore affirmed, as modified. The cause is hereby remanded to the District Court for recomputation of the amount of judgment under the standards outlined herein.

_____
                    Justice

We Concur:

_____
Chief Justice

_____

_____

_____
       Justices