No. 13771

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

THEODORE A. SCHUMAN et al.,

        Petitioners and Appellants,

-vs-

THE STUDY COMMISSION OF YELLOWSTONE
COUNTY et al.,

        Respondents and Respondents.

---

Appeal from: District Court of the Thirteenth Judicial
        District,
        Honorable Bernard W. Thomas, Judge presiding.

Counsel of Record:

    For Appellants:

        Jones, Olsen and Christensen, Billings, Montana
        Paul G. Olsen argued, Billings, Montana

    For Respondents:

        Honorable Mike Greely, Attorney General, Helena
         Helena, Montana
        Moulton, Bellingham, Longo and Mather, Billings,
         Montana
        William H. Bellingham argued, Billings, Montana

---

           Submitted: September 30, 1977

           Decided: APR - 5 1978

Filed: APR - 5 1979

Thomas J. Kearney
                  Clerk

Honorable Robert M. Holter, District Judge, sitting in place of Mr. Chief Justice Haswell, delivered the Opinion of the Court.

This is an appeal from an order of the District Court, Yellowstone County, affirming and declaring valid the September 14, 1976, City of Billings and Yellowstone County alternative form of government elections.

Pursuant to sections 16-5101 to 16-5115, R.C.M. 1947, the Yellowstone County Board of County Commissioners established the Yellowstone County Study Commission (County Study Commission) and the Billings Municipal Council established the Billings Study Commission (City Study Commission). Each study commission held in excess of 50 public meetings to examine both present and alternative forms of city and county governments. They invited public questions and suggestions. In addition, the county study commission held five public hearings and the city study commission held four public hearings from May, 1975 to June, 1976, to elicit preferences as to characteristics of local government, views on county-city government consolidation, and reactions to the study commissions' tentative reports.

Each study commission presented a final report to the public. The City Study Commission distributed approximately 23,000 copies of its final report. This report included a summary of the commission's findings, key provisions of the charter form of government which the City Study Commission proposed as an alternative to the existing city government, the entire proposed charter, a comparison between the then existing form of city government and the proposed charter form, certificates establishing the then existing plan of government and the proposed charter form, and a form of official ballot.

The County Study Commission distributed approximately 26,000 similar final reports offering a proposed commissioner-administrator charter form of county government as an alternative to the existing traditional county commission form.

The city voters on September 14, 1976, voted 7,238 to 6,268 in favor of the proposed charter form of government to replace the mayor-council form of government. The county electors on that day, by a 9,720 to 8,776 vote, rejected the proposed charter form of county government and retained the county commission form.

More than 10 qualified electors of both the city and county filed a petition for judicial review on September 30, 1976, in the District Court, Yellowstone County, pursuant to section 16-5115.15, R.C.M. 1947. The electors contested the validity of the elections and claimed section 16-5115.1, R.C.M. 1947, was unconstitutional. These issues were tried by the District Court which made findings of fact and conclusions of law affirming that the elections of September 14, 1976, and the proceedings leading thereto were valid, and granted judgment to that effect. It is from the findings, conclusions and judgment that this appeal is taken.

This Court has repeatedly stated it will not overturn findings of fact and conclusions of law if supported by substantial evidence and by the law. Evidence will be viewed in the light most favorable to the prevailing party. Rule 52, M.R.Civ.P.; Luppold v. Lewis, (1977), ____Mont.____, 563 P.2d 538, 34 St.Rep. 227; Morgen & Oswood Construction Co. v. Big Sky of Montana, Inc. (1976), ____Mont.____, 557 P.2d 1017, 33 St.Rep. 1121. The judgment of the District Court is presumed to be correct and will be upheld unless clearly shown to be erroneous; the burden of such showing is upon the appellant. Kamp v. First National Bank and Trust Co., (1973), 161 Mont. 103, 504 P.2d 987.

We find the findings of fact and conclusions of law of the District Court are supported by substantial evidence.

Appellants next claim the city and county voters were not given the choice between the established form of government and an alternative form as mandated by Art. XI, Section 9(1), 1972 Montana Constitution. Instead, appellants allege the choice offered was between two alternative forms of government. It is obvious that in each case the city and county study commissions presented charter forms of government which differed in basic composition from any then existing form. The crucial question is whether the established (whether called "present" or "existing") forms of government were offered to the voters at all. The District Court found they were.

The ballots presented to the voters were in the following forms:

Billings City Form

OFFICIAL BALLOT

BALLOT ON ALTERNATIVE FORM OF GOVERNMENT

If the proposed form of government fails to receive a majority of the votes cast on the question, the sub-option also fails. If the proposed form is adopted, the sub-option requires only a plurality of votes cast on the sub-option for adoption.

PLEASE VOTE ON BOTH ISSUES

1.
Vote for One.

☐ For adoption of the charter form of city government proposed in the report of the Billings City Study Commission.

☐ For the present mayor-council form of city government.

2.
Vote for One

Sub-Option to be included in the proposed charter form of city government, if the proposed charter form of city government is adopted. Article III, Section 3.06, Election. The procedure for the nomination and election of all city officials shall be as prescribed by state law.

☐ For Partisan elections.

☐ For Non-Partisan elections.

Yellowstone County Form

OFFICIAL BALLOT

BALLOT ON ALTERNATIVE FORM OF LOCAL GOVERNMENT

If the proposed form of government fails to receive a majority of the votes cast on the question, the sub-option also fails. If the proposed form is adopted, the sub-option requires only a plurality of votes cast on the sub-option for adoption.

PLEASE VOTE ON BOTH ISSUES

1.
Vote for One.

☐ FOR the adoption of the self-government charter proposed in the report of the Yellowstone County Study Commission.

☐ FOR the existing county commission form of county government.

2.
Vote for One.

Sub-option to be included in the new form of government, if it is adopted. Yellowstone County elections:

☐ Shall be conducted on a partisan basis.

☐ Shall be conducted on a non-partisan basis.

-4-

The ballot form was adopted so the voters would be clearly required to vote positively, that is, vote _for_ their choice and not _against_ one of the other forms. That in the city election the voters adopted a new governmental form, while in the county voters retained the old form, is the strongest evidence the voters were fully informed and not confused by the ballots nor the issues.

But, appellants argue, the legislature in 1975 changed the form from "present" to "existing" local government by the adoption of Chapter 106, Laws 1975, entitled "AN ACT TO CREATE A NEW TITLE IN THE REVISED CODES OF MONTANA DEALING WITH LOCAL GOVERNMENT". The title created by Chapter 106 is Title 47A of the Revised Codes of Montana. Appellants claim that section 47A-3-202 et seq., R.C.M. 1947, varied the forms of local government from those under Titles 11 and 16, R.C.M. 1947.

Until 1975, local governments developed through many years of growth and statutory change. There was no single government code as such; rather, the various provisions under which local governments operated were scattered throughout the whole Montana Code, but were mainly found in Titles 11 and 16. Indeed, Chapter 106, Laws 1975, is prefaced by this declaration:

> "WHEREAS, the existing state statutes governing
> local government are confused, contradictory,
> scattered and repetitive, resulting in delay or
> inaction in response to pressing problems * * *."

That was the situation when Title 47A was enacted. The trial court found, and we concur, that the relevant portions of Section 47A-3-202 et seq. contain the same essential characteristics of form of government as were presented under the former codification. At most, it is a recodification. Therefore, it follows that the constitutional

mandates were observed and an alternative and the established (whether called "present" or "existing") forms were presented to the electors for their choice.

Lastly, appellants argue that section 16-6115.1, R.C.M. 1947 compels the selection of an "existing" form of government and thereby violates the 1972 Montana Constitution:

Art. XI, Sections 3(1) and 9(1), 1972 Montana Constitution:

"Section 3(1). The legislature shall provide methods for governing local government units and procedures for incorporating, classifying, merging, consolidating, and dissolving such units and altering their boundaries. The legislature shall provide such optional or alternative forms of government that each unit or combination of units may adopt, amend, or abandon an optional or altern- ative form by a majority of those voting on the question." (Emphasis added.)

"Section 9(1). The legislature shall, within four years of the ratification of this constitution, provide procedures requiring each local govern- ment unit or combination of units to review its structure and submit one alternative form of govern- ment to the qualified electors at the next general or special election." (Emphasis added.)

Art. II, Sections 1 and 2, 1972 Montana Constitution:

"Section 1. All political power is vested in and derived from the people. All government of right originates with the people, is founded upon their will only, and is instituted solely for the good of the whole."

"Section 2. The people have the exclusive right of governing themselves as a free, sovereign and independent state. They may alter or abolish the constitution and form of government whenever they deem it necessary."

Appellants claim this is true because section 16-5115.1 states that unless the electors chose an alternative form of government, then their "existing" form of government shall be as defined by section 16-5115.1. In this manner appellants claim the study commissions and the legislature locked the citizens into a situation which prevented them from exercising their rights.

We preface discussion with some of the rules which

- 6 -

apply generally to all constitutional inquiry.  In Board of

Regents of Higher Education v. Judge, (1975), 168 Mont. 433,

443, 543 P.2d 1323, the Court held:

> "' * * * the Constitution must receive a broad
> and liberal interpretation consistent with the purpose
> of the framers and the people in adopting it,
> that it may serve the needs of a growing state;
> the proper interpretation of any constitutional
> provision requires us to remember that it is a
> part of the organic law--organic not only in the
> sense that it is fundamental, but also in the
> sense that it is a living thing designed to meet
> the needs of a progressive society, amid all the
> detail changes to which a progressive society
> is subject.'"

Nor can we omit the wisdom of Justice Oliver Wendell

Holmes when he wrote:

> "* * * the interpretation of constitutional
> principles must not be too literal.  We
> must remember that the machinery of govern-
> ment would not work if it were not allowed
> a little play in its joints.* * * "  Bain Peanut
> Co. v. Pinson, 282 U.S. 499, 501, 51 S.Ct. 228,
> 75 L.Ed. 482.

In Martien v. Porter, (1923), 68 Mont. 450, 464, 219 P.

817, this Court held:

> "We enter upon a consideration of this
> case, bearing in mind a rule of construction
> dictated by reason and sanctioned by authority
> and long  usage, that whenever an Act of the
> legislative assembly is assailed as unconsti-
> tutional, the question presented to the court
> is not whether it is possible to condemn but
> whether it is possible to uphold.
>
> "In the early case of Brown v. Maryland, 12
> Wheat 419, 6 L.Ed. 678, * * * Chief Justice
> Marshall declared:
>
> "'It has been truly said, that the presumption
> is in favor of every legislative Act, and that
> the whole burden of proof lies on him who de-
> clares its unconstitutionality.'  It has been
> invariably held by this court that the consti-
> tutionality of an Act of the legislature will
> be held unless its unconstitutionality appears
> beyond a reasonable doubt."  (Emphasis added.)

These rules were recently restated by this Court but

with a somewhat more restrictive burden for the proponent:

> "We commence inquiry into the constitutional
> questions with the well-settled rule that when the
> constitutionality of a statute is under scrutiny,
> the statute is presumed to be constitutional and
> the party attacking it has the burden of proving
> its invalidity. * * * This presumption of
> validity applies to all legislative enactments and
> it is the duty of the court to resolve
> all conceivable doubts in favor of validity
> whenever possible." (Emphasis added.)  Reeves
> v. Ille Electric Co., (1976), ____Mont.____,
> 551 P.2d 647, 650, 33 St.Rep. 542.

542. We have earlier in this opinion held sections 47A-3-203, et seq., to be codifications of the various forms of local government utilized under old Titles 11 and 16, Revised Codes of Montana.   We now hold section 16-5115.1, R.C.M. 1947, to be of the same vein; it merely is the "road map" by which one finds his way into Title 47A.   Nor does this holding contravene any rights of the citizens under Art. II, Sections 1 and 2, by telling them "this is it". Art. XI, Section 3(1) fixes responsibility upon the legislature to provide optional or alternative forms of government; certainly it can be implied that this includes the power of defining whatever forms they were to make such alternatives to.   This adds to, rather than detracts from, the rights of the people to choose their own governments since they now have a definition of the system.

Moreover, the 1972 Montana Constitution recognizes changing conditions in society requiring orderly and unhurried revision from time to time of its governmental systems. That is the real spirit of it; to stifle that spirit by too literally interpreting legislation thereunder is not in the interests of society.  Fundamental purposes must be the objective and reasonableness the watchword.

It is then to the end result of all of the proceedings of the legislature, study commissions and elections to which

we must address ourselves. Through the legislative enact-
ments, governments were reviewed and their forms defined;
alternate forms were studied, and one alternate selected
which seemed best suited to the study commissions and the
people. The people were afforded reasonable choices between
the established form and an alternative form and made their
selections. Now to say the whole proceeding is unconstitu-
tional because of some vague claim that there might be some
difference between the old and newer statutory definitions
or that those definitions coerce selection, leads to an
absurd result. Certainly constitutional construction should
not reach such a result. State ex rel. Ronish v. School
Dist. No. 1 of Fergus County, (1960), 136 Mont. 453, 348
P.2d 797.

We hold the classification of the existing form of
government under section 16-5515.1, R.C.M. 1947, not to be
an imposition of any particular form of government upon a
local body, but instead to be compliance with the constitu-
tional mandates of Art. XI, 1972 Montana Constitution.

We affirm the decision of the District Court.

_____
Hon. Robert M. Holter, District
Judge, sitting in place of Mr.
Justice Frank I. Haswell.

We concur:

_____

_____

_____
Hon. Jack D. Shanstrom, sitting
in place of Mr. Justice John C.
Harrison

- 9 -