No. 82-56

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

RICHARD A. WORTMAN and ANN F. WORTMAN,

Plaintiffs and Appellants,

vs.

GARY J. GRIFF, GERALD J. CAPLAN,
CONSERVATIVE INVESTORS GROUP, and
FIRST SECURITY BANK OF LIVINGSTON,

Defendants and Respondents.

Appeal from:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Plaintiffs:

Nash & Nash, Bozeman, Montana
Cordell Johnson, Helena, Montana

For Defendants:

Gene I. Brown, Bozeman, Montana
Huppert & Swindlehurst, Livingston, Montana

Submitted on briefs:  July 15, 1982

Decided:  October 4, 1982

Filed:  OCT 5 - 1982

<u>Thomas J. Kearney</u>
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This action arose out of two agreements by the plaintiffs with Gary Griff and Gerald Caplan, as individuals, and with Conservative Investors Group, a California corporation, for two parcels of land. A trial was held in the District Court of the Eighteenth Judicial District. In its decision, the District Court found that the contracts were separate and distinct agreements, and that plaintiff had defrauded the defendant corporation. From this judgment, plaintiff appeals.

The defendants, Griff and Caplan, who are officers and the sole shareholders of the defendant corporation, contacted the plaintiff about purchasing the property in question. They became aware of the property through an ad in the Wall Street Journal. After receipt of a brochure on the land and some initial phone contact with the plaintiff, Richard Wortman, the defendant, flew to Montana from California to look at the land in mid-November 1977. After taking a walking tour of the property, which was subdivided into ten-acre tracts, and then conducting negotiations, it was agreed that defendants, Griff and Caplan, would purchase lots one through six and the house located on lot one as individuals and the corporation would purchase lots seven through thirteen. This agreement was entered into despite the defendants' knowledge that some of the lots were located in a floodplain, because it was alleged plaintiff said there were building sites outside the floodplain on every lot.

Although there is evidence that the lots in both parcels were not of equal value, it was agreed to allocate one-half of the total price to each contract. It was also agreed in both contracts that the purchaser was to pay the taxes on the land. This was not done and plaintiff had to pay the taxes to prevent a tax lien from being imposed upon the land. However, an attempt was made to reimburse the plaintiff for said taxes but he refused the check. It should also be noted that despite the negotiations, neither contract refers to the other.

The corporate defendant stopped making its semi-annual payments, as required by the contract in March 1981. The individual defendants attempted to make their payment on lots one through six, which was refused by the plaintiff. The plaintiff's contend that the contracts are not separate but constitute one agreement, and therefore the defendants are in default on the whole and their rights in all the property should be terminated.

Defendants on the other hand answered by contending that the two contracts are separate and distinct. The corporate defendant also counterclaimed asking for rescission because plaintiff had misrepresented lots seven through thirteen as having building sites on them, when in fact such lots were located in a floodplain and no such sites existed on some of them.

There are four issues raised on appeal:

1. Whether the District Court erred in granting the non-resident corporate defendant's counterclaim for rescission?

2. Whether the District Court's finding of fraud is supported by substantial evidence?

3. Whether the court erred in failing to construe the two contracts as one?

4. Whether attorney fees should have been awarded to the prevailing party?

The issue of whether the District Court should have granted the nonresident corporate defendant's counterclaim for rescission is the most easily resolved. Appellants claim that the corporation cannot assert its counterclaim for rescission against them. They cite section 35-1-1004(1), MCA, which prohibits a corporation not authorized to do business in Montana from suing in the courts of this state, in support of this contention. However, the corporation in this situation was not instituting a suit. They were merely defending the action brought against them by plaintiffs, which they have a right to do under section 35-1-1004(2), MCA. The counterclaim is just one aspect of the defense which they are entitled to raise and can therefore be

brought.

The next issue to be addressed is whether there is substantial credible evidence to support the finding of fraud. There are nine elements which must be established to prove fraud. These are:

"1. A representation;

"2. Falsity of the representation;

"3. Materiality of the representation;

"4. Speaker's knowledge of the falsity of the representation or ignorance of its truth;

"5. Speaker's intent it should be relied upon;

"6. The hearer's ignorance of the falsity of the representation;

"7. The hearer's reliance on the representation;

"8. The hearer's right to rely on the representation; and

"9. Consequent and proximate injury caused by the reliance on the representation." Van Ettinger v. Pappin (1976), 180 Mont 1, 10, 588 P.2d 988.

The District Court in this case believed that all of said elements were present as is evidenced by its finding of fact number eight stating that the plaintiff fraudulently represented lots seven through thirteen and its conclusion of law number one stating that rescission was proper due to fraud.

Appellants raise two major contentions in this regard. Firstly, they contend that because the defendants had the opportunity to investigate to see whether there were actually building sites on the lots, and that since they did not they cannot complain. But, this is not the case. In Jenkins v. Hillard (1982), 647 P.2d 354, 39 St.Rep. 1156, this Court stated:

"Van Ettinger and Lowe do not stand for the proposition that a buyer must assume a seller or his agent is lying when the buyer is told a plausible explanation for a defect and what is required to cure the defect. The Kansas Supreme Court has expressed the limitations that need to be placed on the Van Ettinger and Lowe cases:

"'The trend of the decisions of the courts of this and other states is towards the just

- 4 -

> doctrine that where a contract is induced by
> false representations as to material existent
> facts, which are made with the intent to
> deceive, and upon which the plaintiff relied,
> it is no defense, to the action for rescission
> or for damages arising out of the deceit, that
> the party to whom the representations were
> made might, with due diligence, have disco-
> vered their falsity, and that he made no
> searching inquiry into facts . . .'"
> Nordstrom v. Miller (1980), 227 Kan. 59, 605
> P.2d 545, 553, quoting Speed v. Hollingsworth
> (1894), 54 Kan. 436, 440, 38 P. 496, 497.

> "Opportunity to inspect in itself is no
> defense to possible willful misrepresentations
> that, because of their plausibility, preclude
> further investigation. See also, Schechter v.
> Brewer (Mo. 1961), 344 S.W.2d 784, and Lumby
> v. Doetch (1979), ___ Mont. ___, 600 P.2d
> 200, 36 St.Rep. 1684." 39 St.Rep. at 1160.

Secondly, they contend that because you can build on a floodplain if regulations are met or that the lots could be rearranged so a building site exists on each that they are not liable. However, this is not the case as neither of these situations has anything to do with the representation that the District Court must have determined the plaintiff to have made, that there were building sites outside the floodplain on each lot.

As this Court has stated on previous innumerable occasions a decision of the District Court will not be overturned where there is substantial credible evidence to support it. Lumby v. Doetch (1979), 600 P.2d 200, 36 St.Rep. 1684. In making a deter-mination on the issue of substantial evidence this Court is guided by a number of principles. These are most concisely set out in Lumby where this Court stated:

> "In resolving this issue, we are guided by a
> number of principles established by this
> Court. The credibility of witnesses and the
> weight to be given their testimony are matters
> for the District Court's determination in a
> nonjury case. Corscadden v. Kenney (1977),
> ___ Mont. ___, 572 P.2d 1234, 1237, 34
> St.Rep. 1533, 1537. Thus, in examining the
> sufficiency of the evidence, we must view the
> same in a light most favorable to the pre-
> vailing party, and we will presume the find-
> ings and judgment by the District Court are
> correct. Hellickson v. Barrett Mobile Home
> Transport, Inc. (1973), 161 Mont. 455, 459,
> 507 P.2d 523, 525. We will not overturn the
> findings and conclusions of the District

> Court unless there is a decided preponderance of the evidence against them, and when the evidence furnishes reasonable grounds for different conclusions, the findings of the District Court will not be disturbed. Morgen and Oswood Const. Co. v. Big Sky of Mont. (1976), 171 Mont. 268, 275, 557 P.2d 1017, 1021. The burden of proof is on the appellant. Schuman v. Study Com'n of Yellowstone Cty. (1978), ____ Mont. ____, 578 P.2d 291, 292, 35 St.Rep. 386, 388." 600 P.2d at 202.

In examining this record in light of these principles and despite the many conflicts in the evidence relating to the above enumerated nine elements of fraud, we cannot overturn the District Court's decision, as there is substantial credible evidence in the record to support its finding that fraud existed.

The third issue raised on appeal concerns whether the two contracts between the plaintiff and the individual defendants and the plaintiff and the corporate defendant should be construed as one. As noted above, the District Court found them to be separate.

A corporation has a separate and distinct identity from its stockholders. Monarch Fire Insurance Co. v. Holmes (1942), 113 Mont. 303, 308, 124 P.2d 994. Appellants urge that this separate identity be disregarded, as Griff and Caplan and the corporation are one and the same, and the contracts be construed as one under sections 28-3-301 and 28-3-203, MCA. However, the general rule set down by this Court in Monarch Fire Insurance Co. v. Holmes, supra, as to disregarding a corporate identity is:

> "'. . . a corporation retains its separate and distinct identity where its stock is owned partly or entirely by another corporation as well as where it is owned by natural persons.' (18 C. J. S., Corporations, sec. 5, p. 375.) Before the corporate cloak will be disregarded 'it must appear not only that the corporation is controlled and influenced by one or a few persons, but, in addition, it is necessary to demonstrate that the corporate cloak is utilized as a subterfuge to defeat public convenience, to justify wrong, or to perpetrate fraud.' (18 C. J. S., Corporations, sec. 6, p. 378.) Under the identity theory it must appear from the evidence and must be sufficiently alleged that the subsidiary corporation is a mere creature of the parent, having no separate business existence and serving as a mere business conduit of the

parents (In re Muncie Pulp Co., 2 Cir., 139 Fed. 546), or a mere department of the parent (Interstate Tel. Co. v. Baltimore & O. Tel. Co., C. C., 51 Fed. 49).

"In People ex rel. Studebaker Corp. v. Gilchrist, 244 N.Y. 114, 155 N.E. 68, 71, it is said: 'Before "the corporation persona" may be ignored, the evidence must show that "the subsidairy is not left with any autonomy" (. . . Proctor & Gamble Co. v. Newton, supra [D.C. 289 Fed. 1013]), and that the parent, though in form speaking and acting through another, is operating the business directly for itself.' (See, also, Erickson v. Revere Elevator Co., 110 Minn. 443, 126 N.W. 130.)" 113 Mont. at 308.

In the present case there is a conflict in the two sides' versions as to how and at whose urging the terms of these two contracts came into being. The Wortmans claim that they sold the land to Griff and Caplan as individuals. They maintain that the separate contracts were made at the request of Griff and Caplan, to them individually and to the corporation. Thus, they claim that it is one contract evidenced by two instruments and a default on either half constitutes a default on the whole.

On the other hand, the respondents contend that the contracts are separate and distinct. They claim the contracts were drawn by the plaintiffs' attorney at the plaintiffs' direction, and that neither contract refers to the other. Finally and unequivocally they point out that both contracts are clear and unambiguous on their face.

Where such a conflict exists, as previously pointed out, this Court can only look to see if the lower court's findings and conclusions are supported by the record. Matters of the credibility of testimony are left for the District Court's determination, Lumby v. Doetch, supra.

In this case, the contracts speak for themselves. They are clear and unambiguous on their faces. Neither makes the slightest reference to the other. The law of Montana is that where the language is clear and unambiguous on its face, it is the duty of the court to enforce it as the parties made it, Ryan v. Board of County Commissioners (1980), 620 P.2d 1203, 1207, 37

- 7 -

St.Rep. 1965, Madison Fork Ranch v. L & B Lodge Pole Timber Products (1980), 615 P.2d 900, 37 St.Rep. 1468. The parties here are not the same as appellants contend, because although there may be some evidence in the record to support disregarding the corporation's separate identity, based on the rule enumerated in Monarch Fire Insurance Co., supra, there is also evidence in the record mitigating against the application of that rule. We find this mitigating evidence substantial and thus cannot interfere with the decision of the District Court.

The final issue raised on appeal, by the respondents is whether they should have been awarded attorney's fees as the prevailing party. The contracts both provide that:

> "In the event of legal action to regain possession or to enforce the rights of any party to this agreement, it is understood that the prevailing party shall be entitled to a reasonable attorney's fee to be fixed by the Court in such action;"

This language in itself is clear and unambiguous, and the court should have enforced it as made by the parties, Ryan v. Board of County Commissioners, 620 P.2d at 1207. This Court has previously upheld such an award of attorney's fees by the District Court where the contract fairly provided for them. Hares v. Nelson (1981), 637 P.2d 19, 38 St.Rep. 2036.

The judgment of the District Court is affirmed and this case is remanded for further proceeding regarding attorney's fees.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

- 8 -