No. 80-169

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

PAUL RYAN,

Defendant and Appellant,

vs.

THE BOARD OF COUNTY COMMISSIONERS
FOR GALLATIN COUNTY AND GALLATIN COUNTY
REFUSE DISTRICT NO. 1 et al.,

Plaintiffs and Respondents.

Appeal from:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin.
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Bolinger, Higgins and Andes, Bozeman, Montana

For Respondents:

Donald White, County Attorney, Bozeman, Montana
Michael J. Lilly, Deputy County Attorney, Bozeman, Montana

Submitted on briefs: September 25, 1980

Decided: DEC 17 1980

Filed: DEC 17 1980

*Thomas J. Kearney*
_____
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Defendant appeals from a judgment in favor of the plaintiff granted by the District Court of the Eighteenth Judicial District, in and for the County of Gallatin, the Honorable W. W. Lessley presiding.

At the request of the County Commissioners of Gallatin County, the Board of Directors of the Gallatin County Refuse District Number 1 entered into a written contract with Paul Ryan on July 11, 1978. The purpose of the contract was to secure defendant Ryan's services and equipment for the operation of the Logan Sanitary Landfill near Logan, Montana. Ryan was to commence operation on December 1, 1978, with the contract expiring at the end of five years. Included in the contract was the following provision:

> "6. Compliance with Laws: The contractor shall operate the disposal site in compliance with all applicable laws, ordinances and regulations, from whatever governmental agency may have jurisdiction over the operation. (Copies of said laws and regulations and recommended standards are attached as Exhibit "B".) Any changes in said laws and regulations shall be applicable to the contract upon receipt of a copy thereof."

As indicated, the above clause provides that copies of applicable laws, regulations and recommended standards would be attached as Exhibit "B." However, no such exhibit was attached to the contract.

At the time the contract was let, section 75-10-221, MCA, was in effect and provided in pertinent part:

> "(1) Except as provided in 75-10-214, no person may . . . operate a solid waste management system . . . without a license from the department.
>
> "(2) The department shall provide application forms for a license as provided in this part.
>
> "(3) The application shall contain the name and business address of the applicant, location of the proposed solid waste management system, a

-2-

plan of operation and maintenance, and such other information as the department may by rule require."

Pursuant to section 75-10-221, MCA, Erick Armstrong, a member of the Gallatin County Health Office, requested that Ryan obtain a license from the Department of Health and Environmental Sciences for the operation of the sanitary landfill. Armstrong made the request on the date the contract was awarded and provided Ryan with an application, asking that it be returned immediately.

As of April 10, 1979, Ryan had yet to obtain the license as requested. Ryan's failure in this regard was based on his belief that it was the Refuse Board's obligation, not his, to obtain the required license.

In response to Ryan's failure to obtain the license, Deputy Gallatin County Attorney, Michael J. Lilly, wrote Ryan a letter, dated April 10, 1979, again requesting him to complete the license application for the Logan Sanitary Landfill immediately. The letter also warned Ryan that if he did not complete the application by April 20, 1979, he would be held in breach of contract pursuant to "paragraph 6" of the contract with the Refuse Board. As a result of this letter, Ryan filled out the application and gave it to Lilly. Lilly then forwarded the application to the State Department of Health.

The application, marked "incomplete," was returned to Ryan in May 1979. John Geech of the State Department of Health indicated at this time that certain additional information was necessary to complete the application. In addition, Vic Anderson, also from the State Department of Health, met with Ryan at the landfill site in September,

1979, and gave Ryan the information needed to be submitted to complete the application. Anderson sent a followup letter on September 24, 1979, confirming the instructions he had given Ryan at the site. Ryan received this letter but claims to have misplaced it before reading it.

As of December 13, 1979, the Logan Sanitary Landfill was still not properly licensed. Consequently, the State Department of Health began refusing to approve subdivisions serviced by the Gallatin County Refuse Board District Number 1 for solid waste disposal. The ban was to remain in effect until a complete license application was submitted.

Shortly after the ban was initiated, Ryan was notified orally by Lilly that the County Commissioners were terminating his contract with the Refuse Board for the operation of the landfill because he did not hold a valid license to operate a solid waste management system. A written notice was also mailed to Ryan indicating that the contract was terminated and that the commissioners were to hold him in breach.

After receiving notice that his contract was to be terminated, Ryan furnished the additional information requested by the State Department of Health. Upon receiving the additional information, the Department deemed the license application complete on December 17, 1979. An actual license, however, was not issued at this time, nor was one issued prior to the hearing on the matter.

Two days later, on December 19, 1979, Lilly advised the Refuse Board that the County Commissioners were holding Ryan in breach of his landfill contract. The Refuse Board, however, voted 7 to 2, with one abstention, to retain Ryan

-4-

for operation of the landfill site.

The Board of County Commissioners thereafter informed the Refuse Board that it was withdrawing its approval of Ryan's contract with the Refuse Board. The County Commissioners then had Lilly draft a letter discharging Ryan from his contract to be signed by Bob Brownell, Chairman of the Refuse Board. After the letter was signed by Brownell, it was personally served on Ryan by Lilly, on December 20, 1979.

On December 21, 1979, the Board of County Commissioners and the Refuse Board filed a complaint seeking declaratory and injunctive relief. In addition, plaintiffs filed a motion for a temporary restraining order, which was granted on the same day, restraining Ryan's operation of the Logan Sanitary Landfill.

A hearing was held on December 27, 1979. On January 15, 1980, the court entered its findings of fact and conclusions of law, finding that plaintiffs were entitled to a permanent injunction and adjudging that the contract was rescinded pursuant to section 28-2-1714, MCA. Judgment was entered on January 16, 1980.

Ryan filed a motion to alter or amend the judgment on January 22, 1980. This motion was denied, and defendant Ryan now appeals.

Defendant raises various issues on appeal, but this Court need only focus its efforts on the following:

1. Whether the District Court erred in finding that the Refuse Board's contract with Ryan required him to obtain a license to operate the Logan Sanitary Landfill?

2. Whether the District Court erred in finding that

the Board of County Commissioners has the power to withdraw its approval of the contract entered into by the Refuse Board and Ryan and then direct the Refuse Board to terminate the contract?

3. Whether the District Court erred in finding that the County Commissioners and the Refuse Board are entitled to rescind their contract with Ryan?

In regards to the first issue, defendant argues that state law indicates that it is the Refuse Board, and not he, who is obligated to obtain a license to operate the Logan Sanitary Landfill. In the alternative defendant claims that even if state law does not so obligate the Refuse Board, his contract does not impose any requirement that he procure the license.

As stated earlier, section 75-10-221, MCA, provides in part:

> "(1) Except as provided in 75-10-214, no person may . . . operate a solid waste management system . . . without a license from the department."

Section 75-10-203(6), MCA, defines the term "person":

> "(6) 'Person' means any individual, firm, partnership, company, association, corporation, city, town, local government entity, or any other governmental or private entity, whether organized for profits or not."

When these two sections are read together, it is apparent that the County Commissioners, the Refuse Board, or the defendant could be proper parties on an application to obtain the requisite landfill license. It may well be that the Department of Health has in the past issued these licenses primarily to municipalities, refuse disposal districts and county commissioners, but there is nothing in the statute to indicate that an individual, such as

-6-

defendant, is exempt from an obligation to seek the required license.

Defendant contends in his reply brief that since public policy dictates it is the primary responsibility of local government to provide solid waste management, the duty to obtain an operator's license is nondelegable; thus, it is plaintiffs who are solely obligated to obtain the license.

We agree with defendant that it is the duty of local government to plan, develop, and implement a solid waste management system. See section 75-10-112(1), MCA. However, we are unable to find that this duty should be extended to require all local governments to obtain the requisite license for operation of a disposal site when the operations by contract are to be performed by another individual. If the legislature had wanted to limit license application to local governmental bodies, it could have easily done so. The legislature, however, chose to merely provide that no "person" may operate a solid waste management system without a license, and then defined "person" so as to include any individual who operates the disposal site. With this being the case, we cannot find that it is solely plaintiffs' responsibility to obtain an operator's license.

Having concluded that defendant can be a proper party on an application for a license to operate a solid waste management system, it now becomes necessary to examine the parties' contract to determine whether it required plaintiffs or defendant to obtain the requisite license.

Paragraph 6 of the contract between the Refuse Board and defendant provides as follows:

"Compliance with Laws: The contractor shall operate the disposal site in compliance with all

applicable laws, ordinances and regulations, from whatever governmental agency may have jurisdiction over the operation. (Copies of said laws and regulations and recommended standards are attached as Exhibit "B".) Any changes in said laws and regulations shall be applicable to the contract upon receipt of a copy thereof." (Emphasis added.)

Plaintiffs contend this provision requires defendant to obtain the license. Defendant argues to the contrary.

Section 28-3-301, MCA, provides: "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."

Section 28-3-303, MCA, provides: "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible, subject, however, to the other provisions of this chapter."

Here, the language is clear and unambiguous and, therefore, needs no construction. Thus, it is the duty of the court to enforce it as made by the parties. See ~~Shulz~~ Schulz v. Peake (1978), ____ Mont. ____, 583 P.2d 425, 35 St.Rep. 1295; Danielson v. Danielson (1977), 172 Mont. 55, 560 P.2d 893.

The contract, as made by the parties, states that defendant, in operating the sanitary landfill, is to comply with all applicable laws and regulations governing its operation. The license requirement, as imposed by section 75-10-221, MCA, is clearly applicable to the operation of the disposal site at issue. Consequently, defendant was required by the terms of the contract to obtain the operator's license.

The second issue on appeal is whether the Board of County Commissioners have the power to withdraw its approval

of the contract entered into by the parties and thereby direct the Refuse Board to terminate the contract.

The County Commissioners have been given supervisory authority over its Refuse Board by section 7-13-215, MCA, which provides:

> "The board of a refuse disposal district established and organized under this part has the following powers and duties, with the approval of the county commissioners of the counties involved:
>
> "(1) to develop and administer a program for the collection or disposal of refuse in the district;
>
> "(2) to employ personnel;" (Emphasis added.)

Defendant acknowledges that the commissioners have control over the approval of actions taken by the refuse board but argues they cannot unilaterally terminate a contract which they previously approved. In support of this position defendant cites Board of Commissioners of Routt County v. Morning (1922), 72 Colo. 200, 210 P. 326.

In Board of Commissioners of Routt County a country judge set the salary of his clerical assistant, which salary was approved by the board of county commissioners. At the end of one year the Commissioners, by resolution, reduced the salary without consulting the judge. The applicable statute read:

> "'All county judges may appoint such clerical assistants and reporters as shall be necessary for the transaction of the business of their courts, at such compensation as shall be fixed by said judges with the approval of the board of county commissioners.'"

The Colorado Supreme Court held:

> "When the salary has been fixed by the judge and approved by the board, it is the established salary until the two parties which established it agree to change it." 210 P. at 326.

This case has been given accord in other cases in

Colorado, but the holding has been limited solely to actions involving the unilateral reduction of salaries previously approved by a board of county commissioners. See Kanaly v. Wadlow (1972), 31 Colo.App. 193, 502 P.2d 83; Schroeder v. Board of County Commissioners (1963), 152 Colo. 313, 381 P.2d 820.

Montana has yet to deal with the issue of whether a board of county commissioners has an implied power to withdraw approval of an action taken by its refuse board. In determining the extent of any such power, we look to 1972 Mont. Const., Art. XI, §4, which provides:

"(1)   A local government unit without self-government powers has the following general powers:

". . .

"(b) A county has legislative, administrative and other powers provided or implied by law.

". . .

"(2) The powers of incorporated cities and towns and counties shall be liberally construed."

It is held that when a board of county commissioners is given an express power of approval, such power is to be complimented by the implied power to withhold approval upon a showing of adequate cause. See McCarten v. Sanderson et. al. (1941), 111 Mont. 407, 109 P.2d 1108. A logical extension of an implied power to withhold approval is an implied power to withdraw approval.

In this instance, the Refuse Board entered into a binding contract with defendant which was approved by the County Commissioners. A provision of that contract provides that defendant satisfy state licensing requirements. The Refuse Board, however, failed to enforce this provision and

allowed the landfill to be operated in violation of law. As a result of the Board's failure, Vic Anderson of the Department of Health, Solid Waste Management Bureau, began refusing to lift sanitary restrictions on subdivisions in the area, thereby exposing the County Commissioners to possible liability. With this being the case, withdrawal of approval of defendant's contract is an obvious necessity, supported by adequate cause, and should be deemed proper under the circumstances.

We acknowledge the Colorado case cited by defendant but find that the circumstances involved here should be distinguished. In this instance we are dealing with a changing set of circumstances, arising after the initial approval, that has virtually eliminated the propriety of the approval. Therefore, the Board of County Commissioners should be extended the implied power to withdraw its approval of defendant's contract and direct the Refuse Board to terminate the contract.

The third issue raised is whether plaintiffs are entitled to rescind the contract with defendant.

Section 28-2-1711, MCA, provides in pertinent part:

"A party to a contract may rescind the same in the following cases only:

". . .

"(2) if, to the fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part;"

A claim for rescission must also establish damages if the action is based on partial or total failure of consideration. See Beierle v. Taylor (1974), 164 Mont. 436, 524 P.2d 783. Damages in such a situation can be shown by pecuniary loss or the alteration of one's position to his

prejudice.  See ~~Manson~~ v. ~~Madison~~ (1931), 90 Mont. 489, ~~500~~  *4*

        *Mason*        *Madson*

P.2d 475.

    Here, defendant, due to his own fault and disregard, failed to comply with the statutory requirement of obtaining a license to operate the landfill in accordance with section 75-10-221, MCA, and paragraph 6 of the parties' contract. As a result of this failure, the Department of Health, through the Solid Waste Management Bureau, began refusing to lift sanitary restrictions on proposed subdivisions in the area.  This refusal, in effect, prevented the approval of those subdivisions for solid waste disposal and thereby exposed plaintiffs to potential liability.  The liability in this instance would arise from other parties seeking mandamus to compel performance of plaintiffs' statutory duty to "enforce Department of Health and Environmental Sciences or Local Board of Health rules pertaining to the storage, collection and disposal of refuse."  See section 7-13-215, MCA.

    It is apparent from a review of the matter that when the County Commissioners chose to terminate defendant's contract, there was a failure of consideration through the fault of defendant, resulting in an alteration of plaintiffs' position to their prejudice,  Consequently, the District Court was proper in rescinding the contract.

    Defendant contends that he was entitled to hearing prior to the termination of his contract.  Defendant also contends that laches bars rescission by plaintiffs.  In rejecting these arguments, we need only note that upon reviewing the submitted transcript and District Court file, we find that defendant improperly raises these issues for

the first time on appeal. Thus, they will not be considered as a basis for reversal. See Northern Plains v. Board of Natural Resources (1979), ____ Mont. ____, 594 P.2d 297, 309, 36 St.Rep. 666, 680.

Defendant has listed numerous other issues but has failed to discuss their application, present his contentions, or support any conclusions with applicable authority. Thus, the alleged specifications of error are deemed to be waived without further consideration. See La Chute v. Brinski (1957), 133 Mont. 230, 321 P.2d 1080.

The decision of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

-13-