No. 84-470

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

WILLIAM HARLOW HASS, individually
and on behalf of HASS LAND COMPANY,

Plaintiff and Appellant,

-vs-

HASS LAND COMPANY, a Mont. corp.,
and PAULA ALTHOFF and LAURA JEAN
KNOTT, individually and as direc-
tors of said corporation,

Defendants and Respondents.

*******************

HASS LAND COMPANY and PAULA ALTHOFF
and LAURA JEAN KNOTT, individually
and in the right of HASS FARMS, INC.,
a Montana corp.,

Cross-Plaintiffs and Respondents,

-vs-

HASS FARMS, INC., and WILLIAM
HARLOW HASS, individually and as
President and Director of Hass
Farms, Inc.,

Cross-Defendants and Appellants.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Tipp, Hoven, Skjelset & Frizzell; Thomas Frizzell,
Missoula, Montana

For Respondents:

Moulton, Bellingham, Longo & Mather; B.E. Longo,
Billings, Montana

Submitted on Briefs: April 25, 1985

Decided: August 5, 1985

Filed: AUG 5 1985

*Ethel M. Harrison*

Clerk

Mr. Justice L.C. Gulbrandson delivered the Opinion of the Court.

William Harlow Hass appeals from an order of the District Court of the Thirteenth Judicial District, Yellowstone County, Montana, granting the specific performance of a settlement agreement between the parties. We affirm.

This appeal involves a long-standing family dispute between William Harlow Hass and his two sisters, Paula Althoff and Laura Jean Knott, over the control and operation of two family farm corporations in Sheridan County, Montana.

Hass Land Company owns approximately 6,130 acres of farm land which was the family farm bequeathed by Margaret Hass in the approximate shares of 50 percent to William and 25 percent each to Paula and Laura. Hass Farms, Inc., is the operating arm of the Hass Land Company, and owns the machinery and equipment. It was also bequeathed by Margaret Hass to her children in approximately the same proportions as the Land Company.

In 1976, William filed suit against his sisters, Paula and Laura, and Hass Land Company, alleging stockholder oppression and requesting the appointment of a receiver for the corporation. The sisters cross-claimed against William and Hass Farms, Inc., for an accounting. On the motion of William the District Court severed the sisters' cross-claim, resulting in the filing of separate complaints against William and Hass Farms, Inc. These complaints were consolidated for trial with the Hass Land and William Hass suit.

On July 23, 1982, all of the parties, acting in both their personal and corporate capacities, entered into an "Agreement of Settlement." Among other arrangements settling the various lawsuits, the Agreement called for the parties to

2

appoint appraisers who were to "determine the entire value of the assets of each corporation." Further, the agreement provided that "[t]he value determined . . . [by the appraisers] shall be reduced by corporate debts owed to third parties such as banks or the CCC," subject to the qualification that "[o]nly $100,000 of third-party debts is to be used to reduce the market value of Hass Farms corporation."

After executing this agreement, the sisters promptly appointed their appraiser. William did not, and, in fact delayed until May 11, 1983, through an entire planting season during which he was in full control of the farm. On that date, the sisters filed a petition with the District Court requesting that the court enforce the specific performance of the settlement contract. William then appointed his appraiser and both appraisers were able to agree on the requested valuations. The petition did not reach trial until April 2, 1984; through yet another planting season. The District Court entered its findings, conclusions, and order on August 20, 1984; well into the third season after the parties had settled their disputes. William was in full control of the farm during the whole time, planting, harvesting, and selling the crops each year. William then appealed the District Court's order to this Court. We note that it is now four years since the parties "settled" their dispute.

Appellant raises the following issues on appeal:

1. That the District Court erroneously substituted its judgment for the appraisers in making additions to the market value of Hass Land Company and Hass Farms.

2. That even if the settlement agreement allowed the District Court to determine the price to be paid by William

3

to his sisters, the court interpreted the agreement contrary to the parties' intent, and the law.

3. That the District Court erred in levying interest against William.

In his first allegation of error, William contends that the District Court erred in adding to the appraised value of Hass Farms, Inc. the amount of the Commodity Credit Corporation (CCC) grain held as loan collateral, and the "115 account"; thereby increasing the amount he was required under the settlement agreement to tender his sisters to purchase their interests. The appraisers had previously agreed to the valuation of the assets of Hass Farms, Inc., and Hass Land Company. William argues that when the appraisers reached these figures, they had already incorporated those debts.

Two separate clauses of the settlement agreement are relevant to the CCC grain issue. The first states:

> "The appraisers will determine the value of the assets of each corporation." (Emphasis added.)

And the second:

> "The value as determined above shall be reduced by corporate debts owed to third parties such as banks or the CCC. . . .
>
> "Only $100,000 of third party debts is to be used to reduce the market value of Hass Farms corporation."

On this point, the District Court found:

> "The court finds that the provision to finding market value contained in the agreement of settlement is plain and unambiguous and all grain owned by Hass Farm as of July 23, 1982, is to be included in the valuation of the corporate assets and further, the deduction for debts owed to third parties, including the CCC is limited to $100,000 . . ."

In Ryan v. Board of County Commissioners, etc. (Mont. 1980), 620 P.2d 1203, 37 St.Rep. 1965, we referred to the

4

following statutes in interpreting a disputed contract provision:

"Section 28-3-301, MCA, provides:

"A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.

"Section 28-3-303, MCA, provides:

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible, subject, however, to the other provisions of this chapter."

Further, in Wortman v. Griff (Mont. 1982), 651 P.2d 998, 39 St.Rep. 1916, we held that where the "language is clear and unambiguous an its face, it is the duty of the court to enforce it as the parties made it." (Citing Ryan, supra.)

The District Court held that the contract was clear and unambiguous and we agree. It specifically provides that the assets of each corporation includes "all personal property owned and used in the operation of Hass Land for Hass Farms, all of its grain, [and] personal equipment . . ." The appraisers were, by the terms of the contract, simply directed to determine the value of those assets. They were not directed to engage in any adjustments for debt. The simple language in the contract, that "the value as determined above" necessarily suggests that the value referred to is antecedent to the adustment for debt. In the clause where the debt adjustment is directed no reference to the appraisal is made. The contract simply provided first that the appraisers were to reach a value of the assets. Then, secondly and independently, that value would be increased by corporate debts in excess of $100,000. The court, in enforcing the specific performance of this agreement did no more than the parties had agreed to do.

5

William made a practice over the years of drawing on the bank account of Hass Farms, Inc. as though it was his own personal bank account. By deposition, Cordell Almond, a CPA and accountant for Hass Farms, testified that this account, called the "115 account," was a personal checking account of William, though drawn on the corporation. William argues that his liabilities under this account were released when all of the claims were released by the settlement agreement. Alternatively, he contends the account, being an asset of the corporation, was specifically included within the appraisers calculations and the parties are bound thereby.

The District Court held:

> "The said account is an asset of the corporation and should be included in determining the value of the assets of said corporation and that in addition thereto, accounts owed by Paula Althoff and Laura Jean Knott to Hass Land Company should be included as an asset of said corporation for the purpose of determining the value of its assets."

We affirm the District Court for two reasons. First is that the court's order effectuated the parties' contractual expectations. William argues that his personal liability under the "115 account" was released in the settlement agreement. To determine the validity of his contention, we must turn to the agreement itself. It directed the appraisers, when valuing Hass Farms, Inc. to consider: "all of its grain, personalty, equipment and machinery . . . and other equipment and personal property of all types as shown on the books of the corporation." (Emphasis added.)

The District Court deemed this clause "clear and unambiguous." Based on evidence on the record that William, Paula, and Laura owed money to Hass Farms, Inc., and that these debts were "on the books" the court determined that they were corporate assets and added them to the amount reached by the appraisers. Since the Agreement of Settlement

6

is controlling, appellants argument mentioned above is irrelevant.

As to William's argument that the appraiser's calculations are binding, we recognize the general rule that:

> "[A]n award made by the appraisers is supported by every reasonable intendment and presumption, and it should not be vacated unless it was made without authority, or was the result of fraud or mistake, or the misfeasance or malfeasance of the appraisers." Lee v. Providence Washington Insurance Co. (1928), 82 Mont. 264, 274, 266 P. 640, 643.

In accord, 5 Williston on Contracts, §802, p. 825.

Here it was clear that the appraisers mistakenly forgot to include in the asset valuation of each corporation those debts that the individual parties owed thereto. Along with neglecting to consider William's debts to Hass Farms, Inc., the appraisers overlooked those owed by Paula Althoff and Laura Knott. This type of mistake, affecting both parties, negates any inference of partiality or bias. It is this type of mistake, where the indica of impartiality is strong, that the District Court may correct when examining an appraiser's report. We affirm on this point.

William next contends that even if the District Court was empowered under the contract to make deductions from the appraisal value that it erred in determining that the CCC loans were corporate debt.

The District Court found that the CCC loans were corporate debt. At issue is grain used as collateral for a non-recourse loan program administered by the CCC. Under this program, a farmer borrows from the government a sum calculated to reflect the value of the crop and puts up the crop itself as collateral. If the market price of the grain turns out higher than the loan rate, the farmer can sell the crop, satisfy the loan, and keep the difference. If the

market price does not go above the loan rate, the farmer can activate a "non-recourse clause" in the loan agreement and turn over the crop to satisfy his obligation.

At trial William presented testimony through his accountant that Hass Farms, Inc., was a cash basis entity, and treated the loans as sales. Paula Althoff and Laura Knott presented evidence to the effect that the CCC payments were actually a loan and not a sale. Further, they argued the contract specifically provides that CCC payments were corporate debt. The District Court concluded that these payments were a loan, thus debt, and deducted their amount from the corporate assets pursuant to the settlement agreement.

In Lauterjung v. Johnson (1977), 175 Mont. 74, 572 P.2d 511, we stated:

> "'When reviewing findings of fact and conclusions of law of a district court, sitting without a jury, this Court has repeatedly held such findings and conclusions will not be disturbed if supported by substantial evidence and by the law . . . . When reviewing evidence it will be viewed in the light most favorable to the prevailing party in the district court, and the credibility of witnesses and the weight assigned to their testimony is for the determination of the District Court in a nonjury trial. (Citations omitted.)'" Citing Luppold v. Lewis (1977), 172 Mont. 280, 284, 563 P.2d 538, 540

Given our deference to the District Court's findings and conclusions we do not find error. There is substantial credible evidence on the record to support the District Court's conclusion that Hass Farms, Inc. treated the Commodity Credit Corporation's loans as corporate debt. The CCC loans have few of the aspects of a true sale. There is no transfer of title. Under the loan program the farmer has the continuing power to dispose of the grain should the price go higher or otherwise desires to do so. Actual title or

8

ownership (possession with the intent to exclude) of the grain is not specifically transferred until the farmer either activates the non-recourse clause or pays his loan. The government pays the farmer for storing the grain during the term of the loan, but aside from that has no other power to use the same. The fact, frequently mentioned by William, that title to the grain has gone to the government through activation of the non-recourse clause for the past few years is irrelevant. There is substantial credible evidence in the record supporting the District Court's determination and we affirm the same.

Finally, William argues that the District Court erred in awarding interest to the respondents. On this point, the court held:

> "That for many years William Harlow Hass . . . has continued to farm all of the Hass Land Company's land since the date of the execution of the agreement of settlement; that any rental paid by Hass Farms, Inc. since the appraisal date, . . . was not taken into account in the determination of market value . . . [and] that if said agreement is specifically enforced and the court does hereby conclude that it should be specifically enforced, Hass Farms, Inc. and William Harlow Hass will have gained unfair advantage by the delay in the closing of this transaction in that they have had the use of the land and not had to pay any rent thereupon; the court therefore concludes that it would be fair and equitable for interest to be paid by William Harlow Hass and Hass Land upon the amount stated from September 5, 1982, the date of the anticipated closing."

The general rule stated in 81A Corpus Juris Secundum, Specific Performance, §198, p. 164 is:

> "Where there is delay in the completion of a contract for the sale or conveyance of property, an adjustment of the rights of the parties may be made by providing for an accounting as to the rents and profits, or for the payment of interest on the purchase price." Accord, 71 Am.Jur.2d, Specific Performance, §219, pp. 282-283.

9

This Court, in Schultz and Wood v. Campbell (1966), 147 Mont. 439, 413 P.2d 879, "for future specific performance cases, . . . reserve[d] the right to allow interest as an offset against profits or crops." In specifically enforcing this contract, the court acted under the general equity umbrella and had the power to adjust the parties obligations to put them in nearly as good a position as if the contract had been performed when required and as required. In this case William's delay of now up to four years of his performance under the settlement agreement clearly deprived Paula Althoff and Laura Knott of the benefit of those years interest on the rent to be paid by William. Further, he had the use of a substantial piece of property for that period. The District Court acted fully within its powers in awarding interest.

The order of District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

10