No. 82-147

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

PIONEER CONCRETE & FUEL, INC.,
a corporation,

                    Plaintiff and Respondent,

        vs.

APEX CONSTRUCTION, INC., a
corporation; and UNITED PACIFIC
INSURANCE COMPANY, a corporation,

                    Defendants, Third-Party Plaintiffs
                    and Appellant,

        vs.

DARRELL BIRDSBILL, d/b/a
BIRDSBILL CEMENT CONTRACTOR,

                    Third-Party Defendant & Cross-
                    Appellant.

---

Appeal from:   District Court of the Second Judicial District,
               In and for the County of Silver Bow
               Honorable Arnold Olsen, Judge presiding.

Counsel of Record:

    For Defendants, Third-Party Plaintiff and Appellant:

        Gough, Shanahan, Johnson & Waterman, Helena, Montana
        Ronald F. Waterman argued, Helena, Montana

    For Third Party Defendant and Cross-Appellant:

        Joseph C. Engel III, argued, Butte, Montana

    For Plaintiff and Respondent:

        Corette, Smith, Pohlman & Allen, Butte, Montana
        Kendrick Smith argued, Butte, Montana

---

                         Submitted:  April 7, 1983

                           Decided:  June 16, 1983

Filed:   JUN 1 6 1983

        _Ethel M. Harrison_
    ————————————————————————— Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

United Pacific Insurance Company (United) appeals from a January 8, 1980, judgment in the District Court of Silver Bow County in the amount of $17,532.93 in favor of Pioneer Concrete & Fuel, Inc., (Pioneer) against Apex Construction, Inc., (Apex), a public works subcontractor. In that judgment, the Court found that United, the bonding company for the subcontractor, was fully obligated for any indebtedness of Apex. Darrell Birdsbill, d/b/a Birdsbill Cement Contractor (Birdsbill), subcontractor of Apex, appeals from a judgment of December 22, 1981 in favor of Apex against Birdsbill in the amount of $13,921.04, and in favor of United against Birdsbill in the amount of $17,532.92. We affirm the judgments of the District Court with the exception that we modify the judgment against Apex so that United is held jointly liable to Pioneer and modify the judgment against Birdsbill so that it grants judgment in the alternative against Apex or United in the amount of $13,921.04.

The issues presented:

1. Whether United is liable to Pioneer, supplier of materials to subcontractor Apex, under subcontract bonds issued by United in behalf of Apex under two municipal contracts for street and storm sewer improvements in Butte?

2. In the absence of liability on the part of United under the wording of the subcontract bonds issued in behalf of Apex as subcontractor, can the judgment of the District Court be affirmed on a theory of equitable responsibility of United for the Apex obligation?

3. Is there substantial evidence sufficient to require affirmance of the judgment against Birdsbill?

4.   In the event that the judgment against Birdsbill is affirmed, should the judgment in behalf of United be reduced to the same amount as the judgment in behalf of Apex?

The facts disclose that Jim Gilman Excavating, Inc. (Gilman) entered into two contracts for street and storm sewer improvements in the city of Butte with Butte-Silver Bow, a municipal corporation.  The Bellevue Project was contracted in April 1978, and the Farragut Project was contracted in August 1978.  As general contractor, Gilman provided performance bonds which are not at issue in this case.

In May 1978, Gilman hired Apex to perform curb, gutter, sidewalk and driveway work on the Bellevue Project and in September 1978 again hired Apex to perform similar work on the Farragut Project.

In turn, Apex subcontracted a portion of its work to Birdsbill for handfinishing sidewalks, driveway and curbs on the Bellevue Project in June 1978 and in October 1978 on the Farragut Project.

On each project, Apex furnished to Gilman a Subcontract Bond in identical form, which provided that Apex and United were bound to Gilman for the amount of the subcontracts, with reference to the two contracts between Gilman and Butte-Silver Bow.  The bonds further provided:

> "NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, That, if the above bounden Principal shall faithfully perform the work contracted to be done under said Subcontract, and shall idemnify the Said Obligee against all loss or damage which obligee may sustain by reason of the failure of said Principal to pay claims for labor, services or materials, furnished and used or consumed directly in connection with the performance of such Subcontract, then this obligation shall be void; otherwise it shall remain in full force and effect.
>
> PROVIDED, HOWEVER, notwithstanding anything in said Subcontract to the contrary, this bond is one of idemnity only and does not inure to the benefit of

3

or confer any right of action upon any person other than the named Obligee."

The contracts between Apex and Gilman were on a Standard Subcontract Agreement form prepared by the Associated General Contractors of America. Regarding the payment by Apex for materials and labor, both contracts provided:

"That the Subcontractor shall:

". . .

"(3) Pay for all materials and labor used in or in connection with, the performance of this contract, through the period covered by previous payments received from the Contractor, and furnish satisfactory evidence when requested by the Contractor, to verify compliance with the above requirements."

Trying the case without a jury, the District Court found in its findings of fact that Pioneer had furnished ready mix concrete, cement, sand and curing compound to Apex on both the Bellevue and Farragut Projects. The Court further found that the total of the claims for such materials on the two projects was $30,244.84, and that Apex had paid $12,711.91, leaving a balance owing from Apex to Pioneer of $17,532.93. The District Court further found that United was obligated fully under its subcontractor bonds. Judgment was decreed in the amount of $17,532.93.

In the same cause, Apex and United had sued Birdsbill as a third party defendant. Initially default judgment was entered against Birdsbill. Subsequently the default was set aside and the third party portion of the action went to trial before the District Court without a jury. The District Court found that $3,611.88 was owing by Apex to Birdsbill which was to be offset against the debt owing from Birdsbill to Apex in the amount of $17,532.92. The District Court therefore concluded that the net amount owed by Birdsbill to Apex was $13,921.04 and entered judgment accordingly. As to United,

4

the District Court concluded that the offset of $3,611.88 was not properly to be allowed, and therefore entered judgment in the full amount of $17,532.92.

I.

The first issue is whether United is liable to Pioneer, supplier of materials to Apex, a subcontractor, under subcontract bonds issued by United in behalf of Apex. This issue must be determined by a careful analysis of the wording in both subcontract bonds, which are identical in substance.

Pioneer contends that the interpretation required is similar to the bond interpretation made by this Court in Carl Weissman & Sons, Inc. v. St. Paul Fire & M. Ins. Co. (1968), 152 Mont. 291, 448 P.2d 740. In contrast, United contends that the bond interpretation must be construed in accordance with Treasure State Industries Inc. v. Welch (1977), 173 Mont. 403, 567 P.2d 947. We find these cases to be controlling, and conclude that Treasure State Industries requires a conclusion for United.

A comparison of the bonds and underlying subcontracts in Weissman, Treasure State Industries and this case discloses significant differences. As pointed out in Treasure State Industries, 173 Mont. at 406, 567 P.2d at 949:

> "We feel Weissman can be distinguished on the facts. In Weissman the surety bond and the contract contained an express provision to pay materialmen. The bond in the instant case contained no such provision. In Weissman the surety bond contained no condition of indemnification of the named obligee. The subcontract in Weissman did not contain a special provision whereby the subcontractor agreed to indemnify the contractor."

The Court in Treasure State Industries then pointed out that although the surety bond and the underlying contract must be read together, the surety's obligations are not coextensive

5

with the obligation of the underlying contract.   The Court

stated at 173 Mont. 407-08, 567 P.2d 949-50:

> "This Court made special note of the fact that,
> unless a promise of the principal is contained in
> the underlying contract was also specifically
> mentioned or made a condition in the surety bond,
> the surety would not have obligations coextensive
> with and measured by the promises of the principal
> in the underlying contract.   In the instant case,
> even though there exists a promise on the part of
> Welch in the subcontract to pay all materialmen,
> <u>there was no condition in Aetna's bond</u> which would
> <u>make this obligation on the part of Welch</u>
> coextensive with the obligations of Aetna.
>
> " . . .
>
> "This decision further supports the rule that the
> mere fact the underlying subcontract of Welch
> contained a promise to pay all materialmen in no
> way creates an obligation on the part of Aetna, the
> surety, unless the bond itself contains a similar
> promise to pay the materialmen." (emphasis added.)

As pointed out in <u>Treasure State Industries</u>, the subcontract

bond in <u>Weissman</u> obligated the principal to pay the claims of

all persons furnishing materials and did not have a provision

indemnifying the principal contractor.   In contrast, the

underlying subcontract in <u>Treasure State Industries</u> required

payment of materialmen by the subcontractor, but the bond

itself did not contain a direct promise to pay for any

materials.   Instead, the <u>Treasure State Industries</u> bond

contained an obligation of Aetna to indemnify the principal

contractor.   As previously quoted, the subcontract bond in

the present case states, in a manner similar in substance to

<u>Treasure State Industries</u>, that Apex shall indemnify Gilman

against all loss which Gilman may sustain by reason of the

failure of Apex to pay claims for materials furnished. It

further expressly provides that the bond is one of indemnity

only and does not inure to the benefit of any person other

than Gilman.

Based upon <u>Treasure State Industries</u>, we therefore

conclude that the provisions in the Apex subcontract bonds

provide for indemnification of Gilman only and therefore evidence an intent to protect Gilman and not Pioneer, the materialman. As a result, under the express wording of the subcontract bonds, Pioneer has no right of action against United on the subcontract bonds, and therefore cannot recover as a matter of contract law under the bonds themselves.

II.

The second issue is whether, in the absence of liability on the part of United under the wording of Apex's subcontract bonds, the judgment of the District Court can be affirmed on a theory of equitable responsibility of United for the Apex obligation.

Notwithstanding our analysis of the contract language of the subcontract bonds, a review of the facts discloses equitable considerations which are controlling in a manner similar to that in Weissman.

We therefore set forth a summarized chronology of facts to emphasize their significant relationship to one another:

7/17/78. Apex officers and wives executed a continuing Agreement of Indemnity to indemnify United from all loss and expense incident to the bonding of Apex Construction, Inc.

2/5/79. Pioneer, an unpaid materialman, sued Apex and United for supplies furnished. Defendants, Apex and United, were represented by the same attorneys.

1/8/80. Judgment for Pioneer against Apex and United in the amount of $17,532.93.

2/7/80. Defendants Apex and United filed notice of appeal of the Pioneer judgment.

2/16/80. Meeting between attorneys for United and Apex about Apex's financial problems. Agreement reached that United would advance $120,000.00 to pay bonded claims in exchange for the Cricks' (officers and stockholders of Apex)

7

agreement to assign personal as well as corporate assets to United.

4/18/80. Assignment from Apex to United of five claims by Apex amounting to over $28,000.00. On same date, an order was entered dismissing Apex with prejudice from the Supreme Court appeal, based on Apex's lack of assets.

11/1/80. Assignment from Apex, the Cricks and their wives, agreeing to forward future proceeds received by Apex to United, to reimburse United for all disbursements made by United on Apex's behalf, setting forth a monthly payment schedule by each of three Cricks in a cumulative amount of approximately $400.00 per month, and providing that after Apex contract claims and litigation are resolved, the three Cricks would apportion the final accounting of United debts between them in specified percentages. In addition, a security interest was granted by Apex to United in the promissory note payable by James Crick, Jr. for $30,294.58. Mortgages were also given by the Cricks on various real properties individually owned by them.

In summary, the facts show that United initially joined with Apex in the trial of the principal case and paid the expenses and attorney fees. Both United and Apex then joined as cross-plaintiffs in suing Birdsbill. United also joined Apex in the appeal. Next United's attorneys secured dismissal with prejudice of the Apex appeal, resulting in an outstanding judgment of the District Court against Apex in the amount of $17,532.92. That judgment was rendered ineffective by a transfer of all assets from Apex. The original transfer of assets from Apex to United was later enhanced by the personal promises of the three Cricks to reimburse United on a monthly payment schedule for all the liabilities of Apex ultimately paid by United.

The effect of the actions of the Cricks, as officers and stockholders of Apex, clearly indicates their desire to see that the obligations of Apex were to be paid by United and that United be reimbursed. While we are not suggesting that the transfers were made for the purpose of defrauding creditors, it is apparent that the effect of all of the steps taken eliminated the capacity of Apex to pay the outstanding judgment against it, thereby rendering valueless the judgment by Pioneer against Apex. In addition to the Apex transfer of assets, the individual Cricks agreed to reimburse United for amounts paid in Apex's behalf. We therefore conclude, under basic equitable principles, that United is responsible for the Apex judgment.

## III.

The third issue is whether there is substantial evidence sufficient to require an affirmance of the judgment against Birdsbill. The basic question raised by Birdsbill is whether or not there are sufficient facts to affirm the judgment of the District Court against Birdsbill. In reviewing the evidence, this Court has set forth the following standard in Walsh v. Ellingson Agency (1980), ____Mont.____, 613 P.2d 1381, 1384, 37 St.Rep. 1269, 1273:

> "With regard to the standard of review, this Court has repeatedly stated it will not overturn findings of fact and conclusions of law if supported by substantial evidence and by the law. Evidence will be viewed in the light most favorable to the prevailing party. Rule 52, M.R.Civ.P.; Luppold v. Lewis (1977), 172 Mont. 280, 563 P.2d 538; Morgen & Oswood Construction Co. v. Big Sky of Montana, Inc. (1976), 171 Mont. 268, 557 P.2d 1017. The judgment of the District Court is presumed to be correct and will be upheld unless clearly shown to be erroneous; the burden of such showing is upon the appellant. Kamp v. First National Bank and Trust Co. (1973), 161 Mont. 103, 504 P.2d 987."

We have reivewed the contentions on the part of Birdsbill and the record. Essentially the facts in the record are

9

undisputed and clearly constitute substantial evidence sufficient to support the findings of fact and conclusions of law. Nothing has been shown to be clearly erroneous. We therefore affirm the judgment against Birdsbill.

IV.

The fourth issue is, in the event that issue three is resolved in an affirmance of the judgment, should the judgment in behalf of United be reduced to the same amount as the judgment in behalf of Apex. In view of our determination that United is responsible for the debt of Apex to Pioneer and in view of the transfer of all assets to United, we also conclude that it is appropriate that Birdsbill be allowed the same offset against United as the District Court granted against Apex. As we review the wording of the judgment against Birdsbill, it appears that Birdsbill could be considered to be responsible for the payment of $13,921.04 to Apex and also $17,532.92 to United Pacific.

We therefore direct the District Court to modify the judgment against Birdsbill to provide that Apex and United are entitled to recover the sum of $13,921.04 from Birdsbill.

We also note that the District Court found, in the findings of fact of the judgment against Apex, that Apex was indebted to Pioneer and that United was fully obligated for any indebtedness of Apex. However, no further mention is made of United in either the conclusions of law or the order. United raises the technical objection that this judgment is, therefore, against Apex only.

In light of the obvious intent of the District Court's findings of fact and our conclusions regarding United's equitable responsibility for the Apex obligation, we direct the District Court to modify the judgment against Apex to

10

provide that both Apex and United are liable to Pioneer in the sum of $17,532.92.

We affirm the judgments of the District Court with the above-noted exceptions and remand for modification of the judgments consistent with this opinion.

                                            Justice

We concur:

Justices