No. 87-290

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

K-W INDUSTRIES, a Division of
Associated Technologies, Ltd.,
a corporation,

Plaintiff and Appellant,

-vs-

NATIONAL SURETY CORPORATION,

Defendant and Respondent.

APPEAL FROM:  United States Court Of Appeals,
For The Ninth Circuit CA Docket No. 86-3778

COUNSEL OF RECORD:

For Appellant:

Alexander Blewett, III; Hoyt and Blewett, Great Falls
Montana

For Respondent:

Robert J. Phillips; Snavely and Phillips, Missoula
Montana

Submitted:  January 7, 1988

Decided:  May 3, 1988

Filed: MAY 3 - 1988

*Ethel M. Harrison*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

In this case we determine that a business entity which is licensed under Montana law to transact the business of insurance, and which issues as a part of its business a contract of suretyship guaranteeing the performance of an underlying contract in Montana (1) is transacting a class of insurance business under Montana law; (2) is subject in the transaction of its business to the Montana Unfair Claims Settlement Practices Act (§ 33-18-201, et seq. MCA); and (3) is liable in a tort action for violations of § 33-18-201, MCA, for damages beyond the express terms of the suretyship contract.

This cause is an original proceeding in this Court, based upon a question certified to us respecting Montana law by the United States Court of Appeals for the Ninth Circuit as provided in our Rule 44, Mont.R.App.P. The said Court of Appeals has pending before it an appeal from an order of the United States District Court for the District of Montana involving the identical parties above designated (cause no. 86-3778 in said Court of Appeals.) The Court of Appeals, finding that it is presented with a question of state law that might be depositive of the case, and for which there are no clear controlling precedents in Montana judicial decisions, has certified to us for our decision the following question:

> (1) Are sureties liable under Montana law for unfair claim settlement practices?
>
> In responding to this question, the Montana Supreme Court shall not be bound by the manner in which the question has been phrased by this Court. Rather, the Supreme Court may reformulate the state law

issue as it sees fit in light of the contentions of the parties.

The background given to us by the Court of Appeals is that Keyes-Scanlon, Inc. (not a party to the appeal) was the general contractor responsible for building a federal water treatment plant in Montana. Pursuant to the federal Miller Act, 40 U.S.C. §§ 270a-d, Keyes-Scanlon was required to post a bond to protect the interests of all suppliers providing labor and materials. Keyes-Scanlon as principal and appellee National Surety Corporation (National) as surety executed a bond pursuant to the Act.

Appellant K-W Industries (K-W) subcontracted with Keyes-Scanlon to furnish supplies on the project. Keyes-Scanlon allegedly refused to pay for certain materials delivered by K-W and used in the construction. K-W then sought payment from National, Keyes-Scanlon's surety, but National likewise refused payment. K-W then filed suit against National in federal court pursuant to the Miller Act, seeking compensation for services rendered. The parties eventually settled the Miller Act suit.

K-W brought this action in Montana state court, alleging that National's "bad faith" conduct prior to and during the Miller Act litigation constituted unfair claims settlement practices as defined by § 33-18-201, MCA, and seeking compensatory and punitive damages under state law. National removed the action to the federal district court in Montana based on diversity jurisdiction. National then moved to dismiss the action for failure to state a claim upon which relief could be granted, arguing principally that the Miller Act provides the exclusive source of remedy for misconduct arising out the surety's performance on a Miller bond obligation and therefore preempts any state law purporting to authorize additional remedies.

The District Court, agreeing with National that K-W failed to state a claim because Congress intended the Miller Act to preempt applicable state law in these circumstances, dismissed the action. K-W timely appealed to the Court of Appeals.

On appeal, National argues that K-W failed to state a claim against it under Montana law for two independent reasons: (1) Montana law does not make sureties liable for unfair claim settlement practices; and (2) if Montana attempts to do so, that attempt is preempted by the federal Miller Act. For prudential reasons the Court of Appeals declined to address the preemption question until it is satisfied that K-W can maintain its action under Montana law. Because the application of Montana law governing unfair claim settlement practices to the conduct of sureties is an unresolved question which may be dispositive of the appeal, the issue was certified to the Montana Supreme Court by the Court of Appeals.

It is obvious from the background supplied to us by the Court of Appeals and the question certified to us, that the Court of Appeals has properly reserved unto itself the preemption issue. In the Court of Appeals, National argues that the Miller Act in this case provides an exclusive federal remedy. We expressly make no determination as to that issue, since it is completely within the ambit of the federal jurisprudence, and not within the question certified to us. We therefore approach this cause as one relating to the duties and liabilities of a licensed surety doing business in Montana, and without any regard to the Miller Act implications in the case.

We examine this case therefore within the frame of the issues posed by National as follows:

(1) Is National Surety an "insurer" within the meaning of § 33-1-201(6), MCA, and therefore subject to suit under § 33-18-201, MCA, for bad faith insurance practices?

(2) If the answer to question number 1 is "yes," does § 28-11-411, MCA, nevertheless operate to exempt sureties from liability from § 33-18-201, MCA, for bad faith insurance practices?

## Is National an "Insurer"?

National concedes in brief that if this Court refers only to the statutes for determining whether National is an insurer under Montana law, there is little doubt that National surely would be designated as an insurer. This for the reason that § 33-1-201(6), MCA, defines an "insurer" as including every person engaged as an indemnitor, surety, or contractor in the business of entering into contracts of insurance. Moreover, § 33-1-201(5), MCA, defines "insurance" as a contract whereby one undertakes to indemnify another or to pay or provide a specified or determinable amount or benefit upon determinable contingencies.

In addition, § 33-1-211, MCA, defines "surety insurance" as including insurance guaranteeing the performance of contracts, other than insurance policies, and guaranteeing and executing bonds, undertakings, and contracts of suretyship.

However, National argues, though those statutory provisions make National an insurer, it is not necessarily subject to regulations found within Montana's Unfair Claim Settlement Practices Act, § 33-18-201, MCA. National argues that the statute never uses the term "insurer," and only the term "insurance" as a word which qualifies the term "policies." National maintains that there are distinctions between surety and insurance contracts. It contends that the first paragraph of § 33-18-101, MCA, indicates that the

- 5 -

purpose of the chapter is to "regulate trade practices in the business of insurance in accordance with the intent of Congress as expressed in Public Law 79-15, which was approved March 9, 1945." Thereafter National points to Group Life and Health Insurance v. Royal Drug Company (1979), 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 as holding that insurance is that business where a large number of risks are accepted, some of which involve losses, and the spreading of such risks which enables the insurer to accept each risk at a slight fraction of the possible liability upon it. National maintains that no court has ever construed the McCarran-Fergus Act so as to extend the "business of insurance" to a surety. This, National argues, because the liability of a surety is not left up to chance or hazard and is not a spreading of risk, because the nature, size and source of the possible loss to the creditor is known from the start.

On this point we find ourselves in agreement with the holding in General Insurance Company of America v. Mammoth Vista Owners Association (Cal.App. 1985), 174 Cal.App.3rd 810, 220 Cal.Rptr. 291, that by plain and explicit language, the legislature made suretyship a "class" of insurance subject to regulation under the code. Therefore, for the purpose of the insurance code, one who issues surety bonds is in "the business of insurance," and subject to the provisions prohibiting unfair and deceptive practices. 174 Cal.App.3d at 824, 220 Cal.Rptr. at 298.

Our statutes clearly commend this result. Section 33-1-102(1), MCA, provides that no person shall transact the business of insurance in Montana "without complying with the applicable provisions of this code." Surety insurance is one of the various kinds of insurance found in the statutes, and § 33-1-211, MCA, defines "surety insurance" as insurance

guaranteeing the performance of contracts. The word "insurer" includes surety, under § 33-1-201(6), MCA. No insurer may transact business in Montana unless authorized by a certificate issued by the Commissioner of Insurance. Section 33-2-101, MCA.

Finally, since § 33-18-101, MCA, provides that the purpose of the chapter regulating trade practices applies to the "business of insurance" and a surety bond, issued by a licensed insurer, is a contract issued in the course of the business of insurance, the licensed surety is therefore subject to the trade practices provisions of our codes.

Once we determine that an insurer issuing a surety bond is transacting the business of insurance in Montana, the remainder of our decision in this cause is predictable. Every insurer in Montana has an implied-in-law duty to act fairly and in good faith in handling a claim under a contract issued by the insurer. In Lipinski v. Title Insurance Company (1982), 202 Mont. 1, 15, 655 P.2d 970, 977, we said:

> Should there by any doubt, we now expressly hold that insurance companies have a duty to act in good faith with their insureds, and that this duty exists independent of the insurance contract and independent of statute. Any statements in our cases, to the extent that they may be or appear to be in conflict with this holding, are expressly overruled.

In Weber v. Blue Cross of Montana (1982), 196 Mont. 454, 643 P.2d 198, we held that Blue Cross, though not technically an insurance company, had a duty of acting in good faith toward those for whom it provided coverage. In Nicholson v. United Pacific Insurance Company (Mont. 1985), 710 P.2d 1342, 42 St.Rep. 1822 we held that if the implied covenant is breached, the reasonable expectations of the contracting parties are not met. It is also clear in Montana that a breach of the applicable provisions of § 33-18-201, MCA, by

an insurer is conduct compensable in tort as to third parties to the insurance contract. Klaudt v. Flink (1983), 202 Mont. 247, 658 P.2d 1065.

It follows therefore that if a surety, transacting the business of insurance, violates the provisions of § 33-18-201, MCA, the claimant, in addition to his or her contract remedies, may be compensated under tort law. Klaudt v. Flink, supra.

Are Sureties Liable Only As Expressed In The Surety Contract?

However, because National in this case is a surety, National contends that its liabilities are limited by the following statute:

> 28-11-411. Extent of surety's liability. A surety cannot be held beyond the express terms of its contract, and if such contract prescribes a penalty for its breach, he cannot in any case be liable for more than the penalty.

We have held in other cases that § 28-11-411, MCA, limits the liability of a surety to the express terms of its contract. Pioneer Concrete and Fuel, Inc. v. Apex Construction Company, Inc. (1983), 204 Mont. 387, 664 P.2d 938; Swanberg v. National Surety Company (1930), 86 Mont. 340, 283 P. 761. National contends that we should be now guided by Amfac Mortgage Corporation v. Arizona Mall of Tempe (9th Cir. 1978), 583 F.2d 426. In that case Amfac had argued that a surety on a bond owed an implied duty of good faith to the obligee of the bond and that if a breach occurred when the surety failed to settle, a tort action arose. The Court of Appeals, interpreting Arizona law, denied the tort action, saying that Arizona courts would limit liability of a surety to the express terms of the surety contract. The Court of Appeals also relied on the California case of United States Leasing Corporation v. Dupont (1968), 69 Cal.2d 275, 70 Cal.Rptr. 393, 444 P.2d 65.

National contends that § 28-11-411, MCA, is consistent with Arizona law construed by the Court of Appeals in the Amfac case and should govern here. Again, we refer to and agree with the case of General Insurance Company of America v. Mammoth Vista Owners Association, supra, where the same point was raised, the U.S. Leasing Corporation case was considered, and the California Appellate Court held:

> In holding a surety cannot be held liable beyond the express terms of its contract, the court merely stated the principle that the sureties obligation to cover losses occasioned by the breach of the principal is limited to those losses it expressly agreed to guarantee. U.S. Leasing does not hold a surety cannot be held liable in tort for its independent violation of statutory or common law duties in the handling of a claim under the bond. (Citation omitted.) Under common law, an insurer who breaches the duty of good faith and fair dealing may be held liable in tort beyond the limits of the policy. (Emphasis in original.)

174 Cal.App.3d at 826, 220 Cal.Rptr. at 299. In accord, see Szarkowski v. Reliance Insurance Company (N.D. 1987), 404 N.W.2d 502, 505.

Accordingly we hold and determine that § 28-11-411, MCA, does not limit the liability of a surety if the surety commits an independent tort in violation of other provisions of the insurance code.

Therefore we answer the certified question as follows:

- 9 -

(1)  Are sureties liable under Montana law for unfair claim settlement practices?
Answer:  Yes.

The original of this opinion shall be deemed to serve the office of a declaratory judgment.  Costs of these proceedings to K-W Industries.  The Clerk of this Court shall serve by ordinary mail upon counsel of record copies of this opinion, and shall mail upon remittitur four certified copies of this opinion to the Clerk of the United States Court of Appeals for the Ninth Circuit.  The further duties of counsel of record are set forth in the order certifying the question to us.

_____
                    Justice

We Concur:

_____
        Chief Justice

_____

_____

_____

_____
            Justices

- 10 -