**THRELKELD–COVINGTON, INC. et al., Appellants,**

v.

**BAKER DRYWALL COMPANY, INC. et al., Appellees.**

**No. 11–91–111–CV.**

Court of Appeals of Texas, Eastland.

Sept. 17, 1992.

Rehearing Denied Oct. 15, 1992.

Snow E. Bush, Akin, Steele & Bush, Longview, for appellants.

Nathan Allen, Jr., Randall B. Warmbrodt, Jones Allen & Fuquay, Dallas, for appellees.

## OPINION

McCLOUD, Chief Justice.

After the prime contractor and the surety on a payment bond failed to pay the plaintiffs' claims, the plaintiffs, who supplied material and labor to the prime contractor, sued the defendants, who assisted in the procurement of the payment bond.[1] The trial court granted plaintiffs' motion for summary judgment. Defendants appeal. We affirm.

The prime contractor, D. Bauman Construction Company, Inc. (Bauman), contracted with Kaufman Independent School District to renovate a school property. Pursuant to TEX.REV.CIV.STAT.ANN. art. 5160 (Vernon Supp.1992), Bauman was required to furnish a payment bond to protect parties supplying labor and material for this public project. Threlkeld–Covington, Inc., through its agents, Kenneth Threlkeld, Brian Malcolm, and W.P. Malcolm, at Bauman's request, procured a payment bond from United American Surety Company, Ltd. (UASC) in the amount of

---

1. The plaintiffs are: Baker Drywall Company, Inc.; Central Distributors, Inc.; JCL Mechanical, Inc.; Pat Reed Company; Mar–Tex Glass Company, Inc.; and Central Glass Insulations, Inc.

The defendants are: Threlkeld–Covington, Inc.; Kenneth Threlkeld; Brian Malcolm; and W.P. Malcolm.

$1,380,000. UASC was a Bahamian company and was not authorized to do business in Texas.

Bauman contracted with plaintiffs who furnished material and labor in connection with the school project. Bauman failed to pay plaintiffs' claims. Thereafter, plaintiffs filed claims against UASC as surety under the bond, and UASC also failed to pay the claims.

The trial court held that, under TEX.INS. CODE ANN. art. 1.14–1, § 8 (Vernon 1981), the defendants, who aided and assisted in the procurement of the payment bond were liable to the plaintiffs. Section 8 of Article 1.14–1 provides a remedy for claimants under a contract of insurance when an unauthorized insurer does not pay claims pursuant to the provisions of the insurance contract. Article 1.14–1, section 8 provides in part:

> In event of failure of any such unauthorized insurer to pay any claim or loss within the provisions of such insurance contract, any person who assisted or in any manner aided directly or indirectly in the procurement of such insurance contract shall be liable to the insured for the full amount thereof pursuant to the provisions of such insurance contract.

■ Defendants argue in their first two points of error that Article 1.14–1, section 8 does not apply to payment bonds because a payment bond is not a contract of insurance. We disagree.

TEX.INS.CODE ANN. art. 1.14–1, § 2(a)(2) (Vernon Supp.1992) provides that the making of a contract of suretyship constitutes doing "insurance business" in this State. The Texas Attorney General concluded that, "The making of a contract of guaranty or suretyship—the essence of executing a performance or payment bond—is an 'act of insurance.' Ins.Code art. 1.14–1, § 2(a)(2)." Op.Tex. Att'y Gen. No. JM–724 (1987). The court in *Freedom, Incorporated v. State,* 569 S.W.2d 48 (Tex. Civ.App.—Austin 1978, no writ), held that a corporation acting as a professional surety issuing bail bonds was engaged in the "insurance business" under Article 1.14–1, section 2(a)(2). We overrule defendants'

first and second points of error. The payment bond was a contract of insurance for purposes of Article 1.14–1, section 8 of the Texas Insurance Code. See also *Massachusetts Bonding & Ins. Co. v. Ray Dilschneider,* 203 F.2d 556 (8th Cir.1953); *General Insurance Company of America v. Mammoth Vista Owners Association,* 174 Cal.App.3d 810, 220 Cal.Rptr. 291 (1985); *K–W Industries, A Division of Associated Technologies, Ltd. v. National Surety Corporation,* 231 Mont. 461, 754 P.2d 502 (1988); *Szarkowski v. Reliance Insurance Company,* 404 N.W.2d 502 (N.D.1987); *Couch on Insurance* § 15:8 (2d rev. ed.); Appleman, *Insurance Law & Practice* § 5273.

■ Defendants urge in their third point of error that plaintiffs failed to prove "causation" between the alleged violation of Article 1.14–1 and damages suffered by plaintiffs. In Point of Error No. 4, defendants contend that plaintiffs failed to prove underlying liability to establish enforcement of the bond.

The summary judgment proof established that:

(a) The payment bond was issued by UASC in the amount of $1,380,000.00 for the benefit of persons providing labor and supplying materials in connection with the renovation of the property;

(b) UASC was not authorized to do business in Texas at the time the payment bond was issued;

(c) Defendants assisted and/or aided, directly and indirectly, in the procurement of the payment bond;

(d) Plaintiffs' claims are valid and in compliance with the notice and perfection requirements of Article 5160;

(e) Plaintiffs are beneficiaries or insureds under the payment bond; and

(f) UASC and Bauman failed to pay Plaintiffs' claims.

The amount of each individual plaintiff's claim against the payment bond was established.

Defendants argue that there can be no liability under Article 1.14–1, section 8 until

the plaintiffs secure a judgment against Bauman and UASC.[2]

We agree with plaintiffs that it was not necessary for plaintiffs to secure a judgment against Bauman and UASC before seeking recovery against the defendants.

The payment bond covers claims for unpaid suppliers of labor and materials. The bond provides that "this Bond shall insure to the benefit of all persons having just claims." TEX.REV.CIV.STAT.ANN. art. 5160(A) (Vernon Supp.1992) requires that a payment bond be executed by a corporate surety duly authorized to do business in this State. Article 5160(A)(b) requires that a payment bond be issued "in the amount of the contract, solely for the protection of all claimants supplying labor and material ... for the use of each such claimant." Article 1.14–1, section 8 expressly provides that, if the unauthorized insurer fails to pay any claim within the provisions of the contract, any person who assisted or aided in the procurement of the contract shall be liable to the "insured" pursuant to the "provisions of such insurance contract." Plaintiffs conclusively established all of the elements of their cause of action. Defendants' liability is imposed by statute. It was not necessary that plaintiffs secure a judgment against either Bauman or UASC before bringing this statutory cause of action against defendants.

◼ Defendants assert that the terms of the bond were violated because Kaufman Independent School District had received an invoice from a subcontractor before making final payment to Bauman. The school district's knowledge of unpaid claims at the time it made the final payment to Bauman did not impair the plaintiffs' claims under the Article 5160 payment bond. *Aetna Casualty & Surety Co. v. Robertson Lumber Co.*, 3 S.W.2d 895 (Tex.Civ.App.—Waco 1928, no writ).

◼ Defendants urge in their fourth point of error that, pursuant to TEX.CIV. PRAC. & REM.CODE ANN. § 17.001 (Vernon 1986), the suit by plaintiffs' against defendants is premature. We note that this defense was not alleged in defendants' response to plaintiffs' motion for summary judgment. See TEX.R.CIV.P. 166a(c); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979).

Furthermore, by its express terms, Section 17.001 applies to suits on contracts involving several obligors or parties that are conditionally liable. The instant suit is not a suit on a contract. It is a statutory cause of action. Defendants' fourth and fifth points of error are overruled.

◼ Defendants urge in their final point of error that the trial court erred in awarding attorney's fees to plaintiffs. Defendants contend that the affidavit filed by plaintiffs' attorney regarding attorney's fees constituted only conclusory statements. We disagree. Defendants did not file a controverting affidavit, but they did object to the attorney's affidavit, urging that it was insufficient. The affidavit stated in part:

As a result of my practice in Dallas County, Texas, and in surrounding counties, I am familiar with the charges of attorneys for like or similar services which are rendered in such cases as the above captioned and numbered matter considering the time expended, the amount in controversy, the complexity of the case, the experience, reputation, ability and billing rates of the attorneys and staff involved, the expertise required, and the other criteria upon which fees are based according to the State Bar of Texas rules and Texas Code of Professional Responsibility.

2. We take judicial notice, as requested by plaintiffs, that, on February 14, 1991, prior to the entry of the summary judgment in favor of plaintiffs, the trial court entered judgment in favor of plaintiffs against UASC. See TEX. R.CIV.EVID. 201; *State ex rel. City of Colleyville v. City of Hurst*, 519 S.W.2d 698, 701 (Tex.Civ. App.—Fort Worth 1975, writ ref'd n.r.e.). Plain-

tiffs state in their brief (but point out that there is no summary judgment proof) that Bauman had filed for Chapter 7 bankruptcy relief on April 28, 1989, in Case No. 89–60861–7, in the Eastern District of Texas, Tyler Division, before plaintiffs filed the instant suit and that UASC had been placed in receivership in the Bahamas.

The attorney stated in his affidavit that his opinion as to what would be a reasonable fee was based upon the above quoted factors and a review of the time records of the law firm. We hold that the affidavit was sufficient. See *Gensco, Inc. v. Transformaciones Metalurgicias Especiales, S.A.,* 666 S.W.2d 549 (Tex.App.—Houston [14th Dist.] 1984, writ dism'd); *American 10–Minute Oil Change, Inc. v. Metropolitan National Bank–Farmers Branch,* 783 S.W.2d 598 (Tex.App.—Dallas 1989, no writ). Defendants' reliance on *Anderson v. Snider,* 808 S.W.2d 54 (Tex.1991), is misplaced. In *Anderson,* the court held that the summary judgment evidence was "wholly conclusory" because the evidence did not include the legal basis or reasoning for the affiant's opinion. The defendants' fifth point of error is overruled.

The judgment of the trial court is affirmed.